**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Donald Lee GARDNER, Defendant-
Appellant.**

**No. 18772.**

United States Court of Appeals,
Seventh Circuit.

June 9, 1971.

Forrest Bowman, Jr., David E. Mc-Clure, Indianapolis, Ind., for defendant-appellant.

Stanley B. Miller, U. S. Atty., William Andrew Kerr, Asst. U. S. Atty., Indianapolis, Ind., for plaintiff-appellee.

Before HASTINGS, Senior Circuit Judge, FAIRCHILD, Circuit Judge, and CAMPBELL, District Judge.*

HASTINGS, Senior Circuit Judge.

Defendant Donald Lee Gardner was charged in Count II[1] of a two-count

---

* Judge William J. Campbell is sitting by designation from the United States District Court for the Northern District of Illinois.

1. The body of Count II of the indictment reads:

"On or about the tenth day of October, 1969, in the Southern District of Indiana, DONALD LEE GARDNER knowingly did possess a firearm, that is

a Stevens pistol having a barrel with a smooth bore designed to fire a fixed .410 gauge shotgun shell, serial number A6824, which had not been registered to him in the National Firearms Registration and Transfer Record maintained under Title 26, United States Code, Section 5841, said possession being in violation of Title 26, United States Code, Section 5861(d)."

indictment [2] with a violation of Title 26, U.S.C.A. § 5861(d) [3] of the Gun Control Act of 1968, amending the National Firearms Act, having knowingly possessed a firearm which had not been registered with the Secretary of the Treasury or his delegate, as required by Title 26, U.S.C.A. § 5841. [4]

Following a bench trial, defendant, having properly executed a written approved waiver of trial by jury, was found guilty of the offense charged in Count II. The district court entered a judgment of guilty and imposed a six months period of imprisonment, which was suspended. Defendant was placed on probation for six months and fined in the sum of $1,000. Defendant appeals. We affirm.

Defendant Gardner owned and operated a Shell service station at 3998 South East Street and resided at 6215 Loretta Drive, both in Indianapolis, Indiana.

He was the owner of an extensive collection of firearms of various types. On September 15, 1969, Robert T. Crofford, Special Investigator for the Alcohol, Tobacco & Firearms Division, Internal Revenue Service, Treasury Department, contacted defendant at his Shell station and offered to purchase guns from him. After succeeding contacts on September 17, 20, 21 and 25, Crofford purchased two firearms from defendant at the service station on September 26, 1969, and another on September 29, 1969.

On the morning of October 10, 1969, Crofford drove to the area of defendant's residence at 6215 Loretta Drive to determine its location and description. Crofford then proceeded to obtain separate search warrants for defendant's Shell station and residence. That afternoon, by appointment Crofford went to defendant's Shell station where defendant sold him two shotguns. Crofford

---

2. Defendant was subsequently found not guilty of the charge in Count I, of being "wilfully and knowingly engaged in the business of dealing in firearms without being licensed to do so," in violation of 18 U.S.C.A. §§ 922(a) (1) and 924(a), and that count is not presently before us.

3. This section provides that "It shall be unlawful for any person—
(d) to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record; * * *."

4. This section provides:
"(a) Central registry.—The Secretary or his delegate shall maintain a central registry of all firearms in the United States which are not in the possession or under the control of the United States. This registry shall be known as the National Firearms Registration and Transfer Record. The registry shall include—
(1) identification of the firearm;
(2) date of registration; and
(3) identification and address of person entitled to possession of the firearm.
(b) By whom registered.—Each manufacturer, importer, and maker shall register each firearm he manufactures, imports, or makes. Each firearm transferred shall be registered to the transferee by the transferor.

(c) How registered.—Each manufacturer shall notify the Secretary or his delegate of the manufacture of a firearm in such manner as may by regulations be prescribed and such notification shall effect the registration of the firearm required by this section. Each importer, maker, and transferor of a firearm shall, prior to importing, making, or transferring a firearm, obtain authorization in such manner as required by this chapter or regulations issued thereunder to import, make, or transfer the firearm, and such authorization shall effect the registration of the firearm required by this section.
(d) Firearms registered on effective date of this act.—A person shown as possessing a firearm by the records maintained by the Secretary or his delegate pursuant to the National Firearms Act in force on the day immediately prior to the effective date of the National Firearms Act of 1968 shall be considered to have registered under this section the firearms in his possession which are disclosed by that record as being in his possession.
(e) Proof of registration.—A person possessing a firearm registered as required by this section shall retain proof of registration which shall be made available to the Secretary or his delegate upon request."

then arrested defendant and executed the search warrant for the service station. Crofford and Special Investigator Richard L. Brim, ATF Division, seized 9 firearms which were subsequently duly inventoried. Other law enforcement officers were present.

In the company of Brim and another ATF Special Investigator, together with state officers, Crofford took defendant to defendant's residence at 6215 Loretta Drive and there executed the search warrant for that location, confining the search to the basement. They seized 38 firearms there which were subsequently inventoried. Included in the 38 firearms seized at defendant's residence was a Stevens pistol, .410 gauge tip-up model, serial number A6824, having a barrel with a smooth bore and designed to shoot a .410 gauge commercial shotgun shell. This weapon was subsequently introduced in evidence at the trial and identified as Government's Exhibit No. 15.

In answering a question by Crofford, defendant stated that the Stevens pistol was not registered in the National Firearms Registration and Transfer Record maintained by Crofford's agency in Washington, D. C. Upon further inquiry by Crofford, defendant said he had obtained this particular firearm from a man named Allen who operated a gun shop on Post Road. Subsequently, Crofford acquired a .410 shotgun round, fired it in the Stevens pistol and concluded it would fire commercially available ammunition. Crofford first saw this gun on a pool table in defendant's basement in his residence at 6215 Loretta Drive at the time of the October 10, 1969 search.

The three issues presented for review on this appeal are (1) denial of due process to defendant because of the absence of an allegation of scienter, (2) invalidity of the search warrant, and (3) insufficiency of the evidence to warrant conviction.

I

■ It is now clear that the Government was not required to prove that the defendant had knowledge of the registration provisions of the statute requiring registration of Government Exhibit No. 15, nor that defendant knew the physical characteristics of the weapon that rendered it subject to registration, in order to convict him of the offense charged in Count II of the indictment. Scienter is not an element in this cause.

The case of United States v. Freed, 401 U.S. 601, 91 S.Ct. 1112, 28 L.Ed.2d 356, decided April 5, 1971, after the briefs in the instant case were filed and before oral argument was heard on April 22, 1971, is concededly dispositive of this issue adversely to defendant's contention on this appeal. A reading of this opinion by the Supreme Court will suffice.

II

■ On the search warrant issue relating to defendant's residence, defendant contends the district court erred in denying his motion to suppress Government Exhibit No. 15 and that it was improperly admitted into evidence. This is grounded on the argument that the search warrant is invalid on its face and because of the defective supporting affidavits by Crofford, the special investigator. We find no validity in defendant's contentions on this issue.

Defendant asserts that although the affidavit of Crofford attached to his affidavit for the search warrant, "by which the Government sought to establish probable cause for the issuance of the warrant, contains several statements of fact from which it could be reasonably inferred that Donald Lee Gardner maintained a collection of firearms in his home," yet, "there is no statement of fact to support the conclusion in the formal section of the affidavit for search warrant that 6215 Loretta was in fact that home."

We have read both supporting affidavits by Crofford. In substance, he

swore that he had good reason to believe that "the premises known as the D. L. Gardner residence" consisting of "a red brick, bi-level dwelling, with a light gray roof, with two car attached garage and white wood trim," the dwelling house bearing "the house numbers of 6215 Loretta Drive, Indianapolis, Marion County," Indiana, was the place where "there is now being concealed certain property, namely firearms," in violation of law. The attached supporting affidavit recites the several conversations he had with defendant at his Shell station from September 15 to October 10, 1969, wherein defendant "Gardner offered a large variety of firearms for sale" and said "he would bring them to the station;" that Gardner again told him "he would bring some from home and asked what specific models I was interested in;" that later upon learning that Crofford had no Federal Firearms License, defendant said "that he would bring in some handguns for me to look at;" that on September 26, 1969, when he purchased two weapons from Gardner at the service station, he saw thirteen guns with plastic price tags attached and defendant told him "he had brought the guns from home;" that on September 29, 1969, defendant said "he would leave his pickup truck at home and bring some rifles and shotguns in his auto truck;" that on October 2, 1969, defendant "offered to go home and bring three 'Mossberg' shotguns in the trunk of his car, or bring them in the morning;" and that upon inquiry from his official agency he "determined that Don L. Gardner, 6215 Loretta Drive, Indianapolis, Indiana," did not hold a valid dealer's license as required by law.

In our judgment a fairminded practical reading of these affidavits, together with all reasonable inferences to be drawn therefrom, furnished sufficient probable cause for the issuance of the warrant by the United States Commissioner. It requires no citation of authority to say that the Commissioner, in making his determination, was entitled to consider the supporting affidavits as a whole and to rely upon reasonable inferences to be drawn therefrom. Under the circumstances in this case, we do not deem it necessary for the Commissioner to have required Crofford to state further facts to support his conclusion that defendant's home or place of residence was located at 6215 Loretta Drive.

Further, the search warrant itself particularly described the D. L. Gardner residence and its location in the precise terms set out in the supporting affidavits.

The Fourth Amendment to the Federal Constitution provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." These requirements are met here.

We hold that the district court did not err in denying defendant's motion to suppress and that Government Exhibit No. 15 was properly admitted into evidence.

### III

In light of our foregoing holdings in Parts I and II, the crux of what remains of defendant's issue on the insufficiency of the record evidence to sustain his conviction is that the Government failed to prove that the weapon in question had not been registered as required by statute.

Government Exhibit No. 8 was admitted into evidence to establish that the gun involved in this cause was not registered as required by law. This exhibit was the duly executed certificate by a proper officer of the Enforcement Branch, Alcohol, Tobacco & Firearms Division, Internal Revenue Service, by direction of the Secretary of the Treasury, that such agency had custody and control of the National Firearms Registration and Transfer Record maintained pursuant to 26 U.S.C.A. § 5841, as recodified on August 16, 1954, and as amended on October 22, 1968, effective November 1, 1968, *supra* at fn. 4. The

certificate was to the further effect that "after diligent search of said record, no evidence was found to show that a Stevens 'tip-up', single barrel shot pistol, .410 gauge, with a 12⅛ inch barrel, serial No. A6824, is registered to Donald Lee Gardner, or that the said Donald Lee Gardner, acquired the weapon by a lawful making, transfer or importation." [5]

The central registry of all firearms in the United States which are not in the possession or under the control of the United States was expressly designated as the "National Firearms Registration and Transfer Record" in the 1968 amendment of 26 U.S.C.A. § 5841(a), *supra*, fn. 4.

Defendant contends that the 1968 amendment created a new title for the registry record, and that "the Government completely failed to show that the gun was not registered in the records maintained pursuant to the National Firearms Act in force immediately prior to the effective date" (November 1, 1968) of the 1968 amendment. From this defendant argues that since such prior registration would have satisfied the requirements of the statute, the Government's failure to establish its absence renders the evidence insufficient and amounts to a failure of proof.

This assertion fails for a number of rather obvious reasons.

Defendant's contention that the 1968 amendment to § 5841, *supra*, created or established a new record is erroneous. There is only one record maintained by the Treasury Department. The fact that the record was given a new designation or title does not mean that Congress intended to create a new and different record of registrations. Subsection (d) *supra*, fn. 4, indicates a contrary intention. It is there provided that any firearms registered prior to the effective date of the Act, November 1, 1968, shall be considered to have been registered under the record designated in the amended section i. e., the National Firearms Registration and Transfer Record.

As the Government indicates in its brief, this Congressional intent is made evident by the Conference Report to the House of Representatives, 90th Congress, 2d Session, Report No. 1956, at page 35, U.S.Code Cong. & Admin.News 1968, p. 4435, which reads:

"All weapons registered under present law would be considered registered under the Act as amended. The Secretary would maintain a national firearms registration and transfer record containing all the data collected under the requirements of the Act as amended."

We conclude that the district court did not err in finding and holding that the weapon in question had not been registered as required by the National Firearms Act.

We have carefully examined the transcript of the evidence adduced by the Government in this case. There can be no doubt that the trial court was fully justified in finding and concluding as it did, that the defendant knew he had in his possession on October 10, 1969, the weapon introduced as Government's Exhibit No. 15.

We have considered all other contentions raised by defendant and find them unpersuasive.

The judgment of conviction and sentence appealed from is affirmed.

Affirmed.

---

5. It was established by the testimony of Crofford at the trial that such a smooth bore pistol, answering the description of the weapon described in Count II of the indictment, is similar to a sawed-off shotgun and is a type of deadly weapon which must be registered under the National Firearms Act.