**UNITED STATES of America,**
**Appellee,**

v.

**James A. DeBARTOLO, Alias John**
**Doe, Defendant, Appellant.**

**No. 73–1056.**

United States Court of Appeals,
First Circuit.

Argued May 7, 1973.

Decided July 11, 1973.

Leroy V. Marcotte, Providence, R. I., with whom David J. Kehoe, Providence, R. I., was on brief, for appellant.

Lincoln C. Almond, U. S. Atty., Providence, R. I., for appellee.

Before COFFIN, Chief Judge, ALDRICH and CAMPBELL, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

Appellant was convicted of aiding and abetting in the transfer of a firearm, to wit, a 16-gauge shotgun having a barrel of less than 18 inches in length, in violation of the National Firearms Act [the "Act"], as amended, 26 U.S.C. §§ 5861(e), 5845(a), and 5812(a). The Act makes it unlawful for any person to transfer a firearm except pursuant to authorization of the Secretary of the Treasury obtained after the transferor has filed a written application for transfer and registration.[1] A "firearm" is defined in the Act as including shotguns with barrels less than 18 inches, rifles with barrels less than 16 inches, machine guns, various other described firearms capable of being concealed on the person, bombs, grenades and the like. § 5845.

While appellant also attacks the sufficiency of the evidence to support his conviction, the only substantial issue presented on this appeal is whether the district court erred in instructing the jury that, to convict, the Government need prove that the defendant had

---

1. 26 U.S.C. § 5812:
   "Transfers

   (a) Application.—A firearm shall not be transferred unless (1) the transferor of the firearm has filed with the Secretary or his delegate a written application, in duplicate, for the transfer and registration of the firearm to the transferee on the application form prescribed by the Secretary or his delegate; (2) any tax payable on the transfer is paid as evidenced by the proper stamp affixed to the original application form; (3) the transferee is identified in the application form in such manner as the Secretary or his delegate may by regulations prescribe, except that, if such person is an individual, the identification must include his fingerprints and his photograph; (4) the transferor of the firearm is identified in the application form in such manner as the Secretary or his delegate may by regulations prescribe; (5) the firearm is identified in the application form in such manner as the Secretary or his delegate may by regulations prescribe; and (6) the application form shows that the Secretary or his delegate has approved the transfer and the registration of the firearm to the transferee. Applications shall be denied if the transfer, receipt, or possession of the firearm would place the transferee in violation of the law."

knowledge only "that the object involved in such transfer was a gun, and I use that word in the common sense meaning of the term. . . . ." Appellant admitted that he participated in the sale of a shotgun, shown to have had a barrel less than 18 inches and to be unregistered, and that he knew it to be a shotgun at the time of the transfer; but he claimed ignorance of its physical characteristics.

The transfer occurred under circumstances which might well have led the jury, notwithstanding appellant's denial, to believe that he was fully aware that the gun was a "sawed-off" shotgun. Appellant, who ran an automobile business, also dealt in guns, owned a skeet range, and tested and repaired guns and rifles. The Government presented evidence that one Mirabella, on May 3, 1972, asked appellant to get a sawed-off shotgun. Appellant told Mirabella to come back the next day, he would have it then. There was testimony that on May 4, 1972, appellant asked an employee to keep a package for him as he did not want it hanging around the shop and would pick it up later. The employee took the package to a girl friend's house. He there discovered that it contained a gun, which he put in a plastic garbage bag. Later that day, Mirabella returned to the appellant's premises and paid $40 to appellant in return for which appellant instructed his employee to get the package. The employee drove to the girl friend's house, got the plastic bag with the gun, and gave it to Mirabella. On May 5, Mirabella took the gun to appellant, showed it to him, and complained that it jammed. Appellant told Mirabella to bring it back and he would fix it.

Appellant testified to a somewhat different version. He said that a friend named Jan Lauson had run into his shop on May 3 or 4 carrying a box with an object covered by a cloth. She told appellant that her boy friend, whom he knew, had been arrested and that she wanted to leave it there. She said it was a shotgun. Appellant, not wanting the gun in the shop, told his employee to get it out of there. Just after he left, Mirabella appeared and asked to buy a shotgun. Appellant purportedly told Mirabella to go "down to the gun shop." Mirabella reappeared the next day, at which time Jan Lauson suggested and appellant agreed that she sell her gun to Mirabella. Appellant suggested $40 as being what used shotguns were worth, Mirabella handed $40 to Lauson, and appellant instructed his employee to get the gun and give it to Mirabella. Appellant testified that he never saw the shotgun.

Appellant moved for judgment of acquittal at the close of the Government's evidence, raising the question of the knowledge required as to the character of the weapon. The motion was denied, the court stating, in substance, that the Government need prove only that defendant knew the object to be a weapon, not a firearm within the meaning of the Act. A renewed motion was denied at the close of all evidence.

In its charge, the court advised that, to convict, the jury must find that defendant was an active participant in the unlawful and willful transfer of a firearm, the latter being defined as a shotgun having a barrel less than 18 inches in length. The only portion of the charge which appellant asserts to be erroneous is as follows:

"To convict the defendant of this accusation of aiding and abetting in the unlawful and willful transfer of a firearm, it is not sufficient merely to show that he knew that an unlawful and willful transfer of a firearm was or had taken place, but rather it must be shown beyond a reasonable doubt that the defendant was an active participant in the total scheme of said transfer. This in turn, Mr. Foreman, members of the jury, means that in order to convict the defendant of aiding and abetting in the unlawful and willful transfer of a firearm, it is necessary that the Government establish beyond a reasonable doubt that the defendant had *knowledge that the object involved in such transfer was a gun,*

*and I use that word in the common sense meaning of the term,* and of course I further instruct you you must find beyond a reasonable doubt that this weapon was capable of being fired." (Emphasis supplied.)

Following the charge, defense counsel objected, and the following colloquy took place:

Mr. Marcotte: You said that the Government must show the defendant knew the object was a gun.

The Court: You want me to tell them he knew it was a firearm?

Mr. Marcotte: That's what Freed[2] says, Your Honor.

The Court: Well, we are getting back into that argument which I read to you.

Mr. Marcotte: There was language —

The Court: No, I read to you the other case that interprets Freed and I read the Sipes case.[3]

Mr. Almond: Nothing as far as the Government is concerned.

Mr. Kehoe [another defense counsel]: We are now talking about intent. We're talking about a firearm. The fact is if someone gives me a box and I don't know what's in it, that's what the case says, Freed says a firearm.

The Court: Well, you have your exception on the record. . . .

While in light of other parts of the charge, which we do not repeat, it is possible to infer that the jury understood "gun" to mean "firearm", we think appellant's counsel by his timely objection pinpointed the issue. As, however, appellant admitted knowing not merely that the object was a "gun" but a shotgun, the precise question is wheth-er there may be a conviction if defendant knew the transferred object to be not only a "gun . . . in the common sense meaning of the term" capable of being fired, but a shotgun, although not necessarily one with a barrel of less than 18 inches. We find no error.[4]

In United States v. Freed, *supra*, n. 2, the court held that an indictment for conspiracy to possess "destructive devices", i. e., hand grenades, in violation of the National Firearms Act, was not defective for absence of an allegation of specific intent, or knowledge that the grenades were unregistered. The court treated an offense under the Act as falling within the list of exceptions, "especially in the expanding regulatory area involving public health, safety and welfare," to the general requirement of proof of *mens rea* or "vicious will." *Id.* 401 U.S. at 607–610, 91 S.Ct. at 1117. It distinguished cases such as Morissette v. United States, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952), involving statutory embezzlement "where scienter was historically required", and extremes such as Lambert v. California, 355 U.S. 225, 78 S.Ct. 240, 2 L.Ed.2d 228 (1957), in which a municipal code made it a crime for a convicted felon to remain in Los Angeles for more than five days without registering. As to *Lambert*, the court said, 401 U.S. at 608, 91 S.Ct. at 1118,

"The mere failure to register, we held, was quite 'unlike the commission of acts, or the failure to act under circumstances that should alert the doer to the consequences of his deed'."

The *Freed* court likened the offense under the National Firearms Act to that in United States v. Dotterweich, 320 U.S. 277, 64 S.Ct. 134, 88 L.Ed. 48 (1943), approving a penalty imposed upon a corporate officer who was personally with-

---

2. United States v. Freed, 401 U.S. 601, 91 S.Ct. 1112, 28 L.Ed.2d 356 (1971).

3. In *Sipes* the Court said (Blackmun, J.): "He knew it was a gun. His possession therefore was a knowing possession. This is all the scienter which the statute requires. It is not necessary that . . . there also be knowledge . . . that it was made in violation of § 5821." Sipes v. United States, 321 F.2d 174, 179 (8th Cir. 1963), cert. denied, 375 U.S. 913, 84 S.Ct. 208, 11 L.Ed.2d 150 (1963).

4. We need not consider whether a mistaken belief that an object is, say, an antique flintlock (thus perhaps a "gun") would be a defense.

out consciousness of wrongdoing but whose firm shipped adulterated and misbranded drugs in violation of the Food and Drug Act.

"This is a regulatory measure in the interest of public safety, which may well be premised on the theory that one would hardly be surprised to learn that possession of hand grenades is not an innocent act. They are highly dangerous offensive weapons, no less dangerous than the narcotics involved in United States v. Balint, 258 U.S. 250, 254, 42 S.Ct. 301, 303, 66 L.Ed. 604, where a defendant was convicted of sale of narcotics against his claim that he did not know the drugs were covered by a federal act." *Freed, supra,* 401 U.S. at 609, 91 S.Ct. at 1118.

The *Freed* court went on to cite language in *Balint, supra,* 258 U.S. at 254–255, 42 S.Ct. 301.

" 'It is very evident from a reading of [the act] that the emphasis of the section is in securing a close supervision of the business of dealing in these dangerous drugs by the taxing officers of the Government and that it merely uses a criminal penalty to secure recorded evidence of the disposition of such drugs as a means of taxing and restraining the traffic. Its manifest purpose is to require every person dealing in drugs to ascertain at his peril whether that which he sells comes within the inhibition of the statute, and if he sells the inhibited drug in ignorance of its character, to penalize him. . . .' " 401 U.S. at 609–610, 91 S.Ct. at 1118.

Appellant seeks to distinguish *Freed* because of its language that by lower court decisions "the only knowledge required to be proved was knowledge that the instrument possessed was a firearm." *Id.* at 607, 91 S.Ct. at 1117, citing *Sipes, supra,* n. 3. *See also* Mr. Justice Brennan's concurring opinion, *Id.* at 614, 91 S.Ct. at 1120, citing *Sipes,* and United States v. Decker, 292 F.2d 89 (6th Cir. 1961), cert. denied, 368 U.S. 834, 82 S. Ct. 58, 7 L.Ed.2d 36 (1961). Undoubtedly *Freed* presupposes proof of knowledge that one is dealing with an instrumentality from which the likelihood of regulation under the Act can readily be inferred. Were the defendant to claim that he thought the transferred object was a fishing rod, he would be entitled to acquittal if the jury found that that was all he knew. Thus in United States v. International Minerals Corp., 402 U.S. 558, at 564–565, 91 S.Ct. 1697 at 1701, 29 L.Ed.2d 178 (1971), the court said,

"In *Balint* the Court was dealing with drugs, in *Freed* with hand grenades, in this case with sulfuric acid and other dangerous acids. Pencils, dental floss, paper clips may also be regulated. But they may be the type of products which might raise substantial due process questions if Congress did not require . . . '*mens rea*' as to each ingredient of the offense. But where, as here and as in *Balint* and *Freed,* dangerous or deleterious devices or products or obnoxious waste materials are involved, the probability of regulation is so great that anyone who is aware that he is in possession of them or dealing with them must be presumed to be aware of the regulation."

■■ The last quoted sentence is the crux of the matter. The Government need not prove that a defendant knows he is dealing with a drug or a weapon possessing every last characteristic which subjects it to regulation. It is enough to prove he knows that he is dealing with a dangerous device of such type as would alert one to the likelihood of regulation. If he has such knowledge, and if the particular item is in fact regulated, he acts at his peril. A shotgun in today's society plainly falls within this category. One knowingly participating in the sale of such a lethal instrumentality cannot escape liability by failing to inspect the length of its barrel any more than by failing to inquire into whether it is registered. In *Freed,* it is true, the court assumed that the Government would have to prove that the defendant knew the grenade was a grenade, hence a "firearm". Because all grenades are classified as "firearms",

the issue never arose whether knowing possession of a grenade would give rise to a duty to inspect to see if it was the kind of grenade regulated. But we see no difference in rationale between the duty of one possessing a grenade to ascertain if it is registered, and of one, knowingly transferring a shotgun, to ascertain if by reason of its barrel length it must be registered. *See* Warren v. United States, 447 F.2d 259, 263 (9th Cir. 1971); United States v. Gardner, 448 F.2d 617, 619 (7th Cir. 1971); United States v. Gross, 451 F.2d 1355, 1360 (7th Cir. 1971). We hold that one who participates voluntarily and knowingly in the transfer of a shotgun may, if the gun is a "firearm", be found guilty of a violation of § 5861(e) regardless whether he is shown to have actually known that its barrel was under 18 inches. There was no error.

Appellant also challenges the denial of his motion for a judgment of acquittal. But the evidence amply supports a finding that appellant aided and abetted an illegal transfer of what was, in fact, a "firearm", and that he knew, at very least, that the weapon was a shotgun.

Affirmed.