**UNITED STATES of America**
v.
**Clarence WHITE.**
**No. 72 H Cr. 134.**

United States District Court,
N. D. Indiana,
Hammond Division.

Dec. 21, 1973.

John R. Wilks, U. S. Atty., Fort Wayne, Ind., by Andrew B. Baker, Jr., Asst. U. S. Atty., Hammond, Ind., for plaintiff.

Max Cohen, Gary, Ind., for defendant.

## MEMORANDUM OPINION

ALLEN SHARP, District Judge.

The defendant, Clarence White, was indicted in a two count indictment on November 14, 1972 for violation of 26 United States Code § 5861(d), possession of two unregistered sawed-off shotguns. (Count III of the indictment was dismissed on the Government's motion before trial.) The defendant and the Government filed a written waiver of jury trial and this case was tried to the court alone on December 7, 1973.

Officer Wardell Hampton of the Gary police testified that on October 25, 1972 he had occasion to go to apartment 224 at a building located at 16th Avenue and Washington Street in Gary, Indiana. Officer Hampton was in uniform. His testimony on this subject is as follows

"Q Did you have occasion to go to Apartment 224 in that building?

A Yes, sir.

Q When you went to the door of that apartment, were you in uniform?

A Yes, I was.

Q And what did you do?

A I first knocked on the door and asked if I could speak to the occupant.

Q Did you use—what precisely, to the best of your memory, were your exact words?

A I knocked on the door and I said, 'Can I speak to you for a minute.'

Q And then what happened?

A The door was opened. He said, 'Yeah.' I said, 'Could I come in.' They said, 'Yes come in.' And as

I entered the apartment, I saw the shotguns stacked up against the window.

Q When you first saw the shotguns, where were you?

A When I first saw the shotguns, I was at the right door jamb, the right door frame.

Q Inside, or outside of the apartment?

A Outside."

■ Two exhibits were offered into evidence and were identified as the sawed-off shotguns referred to in Counts I and II of this indictment. There was categorical testimony by Officer Hampton that these two exhibits were in identically the same condition as when he observed them at the above described apartment on October 25, 1972. Michael A. Blackmun, an Agent of the Alcohol, Tobacco and Firearms Division of the Department of Treasury, testified that the two sawed-off shotguns in question had been in his control since October 26, 1972 and that both were operable. He also measured each one of them and Exhibit 1 had a barrel length of 13 and ⅜ inches and an overall length of 29½ inches and Exhibit 2 had a barrel length of 14½ inches and an overall length of 22 and ¾ inches. The defendant objected to the admission of these two exhibits because of the alleged failure of the Government to establish the "chain" or "continuity" of possession" in order to prove the weapons had not been changed or altered. It is well settled that such an objection goes merely to the weight of the evidence and not to its admissibility. United States v. Vasquez, 476 F.2d 730 (5th Cir. 1973). See also, United States v. Mendoza, 473 F.2d 692 (5th Cir. 1972), and United States v. Wilson, 451 F.2d 209 (5th Cir. 1971).

■ The other item of evidence offered by the Government over defendant's objection was Exhibit 3 which was a certified statement of a search of the record at the National Firearms and Registration Transfer Department which was offered for the purpose of in-dicating that the two weapons in question here were not registered with that Department. There are numerous recent cases which uphold the admission of this certificate. For example see United States v. Thompson, 420 F.2d 536 (3rd Cir. 1970), United States v. Gardner, 448 F.2d 617 (7th Cir. 1971).

This leaves for our consideration the more generalized charge of the defendant that there is not sufficient evidence here to warrant a conviction of possession under 26 U.S.C. § 5861(d).

As indicated the two firearms in question were in plain view to Officer Hampton when the door of the apartment was opened by the defendant. The apartment in question consisted of one room approximately 12½ feet by 14 feet. In this small room the defendant was present with a female and a baby. The room contained an adult bed, a child's bed, a dresser and a utility table. When the officer knocked on the door of the apartment, the defendant answered the door and invited the officer in.

The basic legislative purpose of this statute was expressed by Mr. Justice Douglas in United States v. Freed, 401 U.S. 601, 91 S.Ct. 1112, 28 L.Ed.2d 356, 361 (1971), where he said:

"We also conclude that the District Court erred in dismissing the indictment for absence of an allegation of scienter.·

The Act requires no specific intent or knowledge that the hand grenades were unregistered. It makes it unlawful for any person 'to receive or possess a firearm which is not registered to him.' By the lower court decisions at the time that requirement was written into the Act the only knowledge required to be proved was knowledge that the instrument possessed was a firearm. See Sipes v. United States, 8 Cir., 321 F.2d 174, 179, and cases cited.

The presence of a 'vicious will' or mens rea (Morissette v. United States, 342 U.S. 246, 251 [72 S.Ct. 240, 243, 96 L.Ed. 288, 294]), was long a re-

quirement of criminal responsibility. But the list of exceptions grew, especially in the expanding regulatory area involving activities affecting public health, safety, and welfare. Id., at 254 [72 S.Ct. at 245, 96 L.Ed. at 295]. The statutory offense of embezzlement, borrowed from the common law where scienter was historically required, was in a different category. Id., at 260–261 [72 S.Ct., at 248–249, 96 L.Ed. at 298, 299]. '[W]here Congress borrows terms of art in which are accumulated the legal tradition and meaning [401 U.S. 608, 91 S.Ct. 1112] of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken and the meaning its use will convey to the judicial mind unless otherwise instructed.' Id., at 263 [72 S.Ct., at 250, 96 L. Ed. at 300].

At the other extreme is Lambert v. California, 366 U.S. 225 [78 S.Ct. 240, 2 L.Ed.2d 228] in which a municipal code made it a crime to remain in Los Angeles for more than five days without registering if a person had been convicted of a felony. Being in Los Angeles is not per se blameworthy. The mere failure to register, we held, was quite 'unlike the commission of acts, or the failure to act under circumstances that should alert the doer to the consequences of his deed.' Id., at 228 [78 S.Ct., at 243, 2 L.Ed.2d at 231]. The fact that the ordinance was a convenient law enforcement technique did not save it.

'Where a person did not know of the duty to register and where there was no proof of the probability of such knowledge, he may not be convicted consistently with due process. Were it otherwise, the evil would be as great as it is when the law is written in print too fine to read or in a language foreign to the community.' Id., at 229–230 [78 S.Ct., at 243–244, 2 L.Ed.2d at 232]. [401 U.S. 609, 91 S.Ct. 1112]

In United States v. Dotterweich, 320 U.S. 277, 284 [64 S.Ct. 134, 138, 88 L.Ed. 48, 53] a case dealing with the imposition of a penalty on a corporate officer whose firm shipped adulterated and misbranded drugs in violation of the Food and Drug Act, we approved the penalty 'though consciousness of wrong-doing be totally wanting.'

The present case is in the category neither of Lambert nor Morissette, but is closer to Dotterweich. This is a regulatory measure in the interest of the public safety, which may well be premised on the theory that one would hardly be surprised to learn that possession of hand grenades is not an innocent act. They are highly dangerous offensive weapons, no less dangerous than the narcotics involved in United States v. Balint, 258 U.S. 250, 254 [42 S.Ct. 301, 303, 66 L.Ed. 604, 606] where a defendant was convicted of sale of narcotics against his claim that he did not know the drugs were covered by a federal act. We say with Chief Justice Taft in that case:

'It is very evident from a reading of it that the emphasis of the section is in securing a close supervision of the business of dealing in these dangerous drugs by the taxing officers of the Government and that it merely uses a criminal penalty to secure recorded evidence of the disposition of such drugs as a means of taxing and restraining the traffic. Its manifest purpose is to require every person dealing in drugs to ascertain at his peril whether that which he sells comes within the inhibition of the statute, [401 U.S. 610, 91 S.Ct. 1112] and if he sells the inhibited drug in ignorance of its character, to penalize him. Congress weighed the possible injustice of subjecting an innocent seller to a penalty against the evil of exposing innocent purchasers to danger from the drug, and concluded that the latter was the result preferably to be avoided.' Id., at 253–254

[42 S.Ct., at 302–303, 66 L.Ed. at 606].

For parallel statements of this purpose see United States v. Gardner, 448 F.2d 617 (1971); United States v. Shafer, 445 F.2d 579 (7th Cir. 1971); United States v. McCutcheon, 446 F.2d 133 (7th Cir. 1971), and United States v. Lauchli, 444 F.2d 1037 (7th Cir. 1971).

 It is basic and elementary that the Government has the burden to prove the defendant's possession of these two sawed-off shotguns beyond a reasonable doubt. There can be no doubt that one of the basic purposes of this statute is to reduce traffic in such instruments that have as their prime purpose human disfigurement and death. In this regard United States of America v. Davis, 346 F.Supp. 405, 406 (1972) states:

"We recognize what Congress was intending to accomplish by the gun control act in question in putting an end to traffic in weapons such as this: submachineguns, hand grenades, sawed-off shotguns, etc. We also recognize that the words 'wilfully and knowingly' are significantly absent from this section of the law. We do not believe, however, that Congress intended to hold the innocent driver or passenger in an automobile who was unaware of the presence of the gun in the car. The United States Supreme Court has ruled that a person need not have specific intent or mens rea to be guilty under this act. See United States v. Freed, 401 U.S. 601, 91 S.Ct. 1112, 28 L.Ed.2d 356. We take this case to mean that the fact that defendant did not know that the gun was unregistered was not available as a defense. In Freed the defendant knowingly had possession of hand grenades and the court said '. . . one would hardly be surprised to learn that possession of hand grenades is not an innocent act.' We believe that there must be something beyond the mere fact that the gun was found in the car. In the concurring opinion of Mr. Justice Brennan in Freed he says:

"The Government and the court agree that the prosecutor must prove knowing possession of the items and also knowledge that the items possessed were hand grenades.' "

In regard to the possession of a firearm under this same statute in United States v. Holt, 427 F.2d 1114, 1116 (8th Cir. 1970) it is stated:

"Defendant suggests that Green was in complete control and possession of the weapon while Holt had no control or possession. Even considering absolute possession as opposed to constructive possession, the evidence lends itself more readily to a theory that Holt was in actual possession or was at least in joint possession, than it does to a theory that Green had sole possession. Holt carried the gun to the car, placed it there, had it in complete view readily accessible only to him, and paid in part for the trip. Holt also appears to have been a joint decision maker in regard to where the group would go and what they would do to dispose of the gun.

The cases indicate that evidence far less substantial than that presented here may be sufficient for a finding of possession. Mack v. United States, 326 F.2d 481 (8th Cir. 1964), cert. denied, 377 U.S. 947, 84 S.Ct. 1355, 12 L.Ed.2d 309; Hill v. United States, 294 F.2d 562 (8th Cir. 1961).

Possession need not be sole, but may be joint, Brothers v. United States, 328 F.2d 151 (9th Cir. 1964), cert. denied, 377 U.S. 1001, 84 S.Ct. 1934, 12 L.Ed.2d 1050. The evidence summarized clearly is sufficient for a finding that Holt was, at least, one of two or more persons in joint possession of the illicit weapon in Missouri.

Possession may be constructive as well as actual. Mack v. United States, supra; United States v. Burch, 313 F.2d 628 (6th Cir. 1963). *The clear evidence of Holt's knowledge of the weapon's presence, his proximity to it, and the discussion regarding its disposition is ample to support a finding of*

*constructive possession on the part of Holt* (my emphasis)

In this case the evidence discloses beyond all reasonable doubt that the defendant was in close proximity to said weapons and could only have avoided knowledge of their presence and proximity by keeping his eyes closed.

The reasoning and the result of *Holt* is also supported in United States v. Adams, 438 F.2d 644 (8th Cir. 1971), in United States v. LaGue, 472 F.2d 151 (9th Cir. 1973), and United States v. Virciglio, 441 F.2d 1295 (5th Cir. 1971), all cases under this statute. United States v. Davis, 346 F.Supp. 405 (W.D. Pa.1972) contains an excellent array of authority and provides a good guideline for this case. In *Davis* the prosecution was for unlawful possession of a sawed-off shotgun under Section 5861(b). In it the defendant was the driver of a borrowed automobile and was acquitted for unlawful possession of a sawed-off shotgun found under, partially projecting from and immediately beneath the driver's seat. In *Davis* there was an absence of proof of the driver's knowledge of the presence of the weapon in the automobile. In this case there can be no question whatsoever that the defendant had full knowledge of the presence of these two sawed-off shotguns which were in open view in a small one room apartment which he was occupying with the door closed. This is true even in the absence of explicit evidence as to who owned said apartment. In United States v. Shephard, 439 F.2d 1392, 1393 (1st Cir. 1971), the court states:

"Defendant's car, while he was driving to work with two friends, broke down on the road. Having placed some articles of personal property in the trunk, defendant left and called an emergency car service. Later he returned to the car to meet the garageman and give him the key. Almost immediately after reaching the garage the garageman noticed part of a black object under the driver's seat. Later, his curiosity being aroused, he removed it and found it to be a single-barrelled shotgun wrapped in tire-tape. He called the police. There was a live shell in the gun, and two more in the console or glove compartment.

This is not a case of finding a package of marijuana cigarettes under the seat, which a guest could readily have placed there. Guevara v. United States, 5 Cir., 1957, 242 F.2d 745. Suggestions that the gun might have belonged to defendant's wife, who used the car, or to his passengers or to some friend (who, perforce, took occasion to secrete shells in the console, as well as to place the gun under the driver's seat) are insufficient to require us to say that a jury could not find beyond a reasonable doubt that the gun was the defendant's."

As indicated, supra, in United States v. Holt possession need not be sole but may be joint. Possession may also be constructive as well as actual. The statute in question makes mere possession of an unregistered firearm an offense. The facts in the cases cited as authority in this memorandum, all of which deal with this statute, present situations in which the defendant as well as others may have had access to the weapon in question or have had the opportunity to know about its presence. However, the facts in this case indicate to this court, beyond a reasonable doubt, that the defendant was in a small room with the door closed and with the two weapons in plain view. Based upon the foregoing authorities the inference is inescapable to this court that the defendant was, in fact, in possession of the two weapons in question. Therefore, the Government has sustained its burden to prove this offense beyond a reasonable doubt.

After a careful review of a written transcript of all the evidence in the trial of this case, after considering the oral arguments of counsel and the written briefs of counsel, the court now denies the defendant's Motion for Acquittal and finds the defendant guilty of the offenses charged in Counts I and II of the Indictment.