**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Ralph R. ROSS, Defendant–Appellant.**

**No. 90–1028.**

United States Court of Appeals,
Seventh Circuit.

Argued June 15, 1990.

Decided Nov. 5, 1990.

Ira H. Raphaelson, U.S. Atty., Loretta H. Davenport, Barry R. Elden, Asst. U.S. Attys., Chicago, Ill., for plaintiff-appellee.

Chris Averkiou, Chicago, Ill., for defendant-appellant.

Before CUMMINGS, EASTERBROOK, and MANION, Circuit Judges.

PER CURIAM.

Defendant Ralph Ross appeals his conviction on a charge of illegal possession of an unregistered firearm in violation of the National Firearms Act (the Act). We affirm.

## I. Background

On November 4, 1987, Special Agent Kevin Cronin of the Bureau of Alcohol, Tobacco and Firearms (ATF) searched Ralph Ross' home and discovered over 50 guns. Apparently all the guns except a 1915 French Chauchat machine gun were properly registered. A plug of weld inside the machine gun's chamber rendered it incapable of firing a shot. However, an ATF agent determined the gun could be restored to shoot within several hours by removing the weld. Ross claimed he did not know the gun was automatic, but did know it had been plugged. He further claimed the weapon previously had belonged to his father, who told him it was a replica. He never registered the weapon because he did not consider it to be a firearm.

A federal grand jury indicted Ross on two counts. Count 1 charged knowing possession of a firearm not registered to him in violation of 26 U.S.C. § 5861(d). Count 2 charged that he knowingly stored explosive material in a manner not in conformity with the Secretary of Treasury's regulations in violation of 18 U.S.C. § 842(j). Ross pleaded guilty to Count 2. He proceeded to trial on Count 1 and was found guilty.

Ross appeals, and raises four issues. First, he alleges that his conviction constitutes an *ex post facto* punishment because he possessed the machine gun prior to enactment of the statute. Second, Ross contends the trial court abused its discretion by ordering him to reimburse the Federal Defender Program. Third, he alleges the district court incorrectly relied on factors which had not been proved beyond a reasonable doubt in determining his sentence. Finally, Ross argues that the district court incorrectly instructed the jury that the government was required only to prove Ross knew the weapon was a firearm in the general sense, rather than a machine gun.

## II. Analysis

■ The first three issues are meritless. Although it is true that Ross possessed the machine gun prior to the 1986 amendments which made possession illegal, the conduct for which he was charged and convicted occurred on November 4, 1987, well after the amendments took effect. *See, e.g., United States v. Poulos*, 895 F.2d 1113, 1120 (6th Cir.1990), where the court rejected defendant's argument that his conviction constituted *ex post facto* punishment because he obtained silencer kits prior to the 1986 amendments, but was charged with possessing those kits after the amendments took effect.

■ Ross further contends that the district court's order to reimburse the Federal Defender Program for the cost of his court-appointed counsel was improper because he was unable at the time to make repayment. However, the evidence showed that Ross possessed the sole beneficial interest in a home valued at $149,600. On the day Ross was arraigned, he signed over his interest to Joe Waz, a friend of his. Ross continued to pay taxes on the property. Waz testified he was going to allow Ross to live in Waz' home. The district court ruled that the circumstances of the transfer suggested that it was not a legitimate transaction. It found the transfer to be an effort to deceive the court, and as a result, the court ordered Ross to reimburse the program for the cost of his attorney. We find that the district court did not abuse its discretion in so finding. *Cf. United States v. Durka*, 490 F.2d 478 (7th Cir.1973) (trial court's determination whether defendant able to pay costs reviewed for abuse of discretion).

■ Ross also argues that factual determinations such as his role in the offense and his acceptance of responsibility are essential elements of the offense, and therefore must be proved beyond a reasonable doubt to a jury rather than by a preponderance of the evidence to a sentencing judge. However, "there is no Fifth Amendment

right to a grand jury on the sentencing facts, nor any Sixth Amendment right to their determination by a petit jury, nor due process requirement that they be established beyond a reasonable doubt or even by clear and convincing evidence." *Buckley v. Butler,* 825 F.2d 895, 903 (5th Cir.), *cert. denied,* 486 U.S. 1009, 108 S.Ct. 1738, 100 L.Ed.2d 201 (1987). Ross does not challenge whether the sentencing findings were supported by the evidence; he only argues that the findings were within the province of a jury to be determined beyond a reasonable doubt. Courts consistently have rejected this argument, and so do we.

■ The fourth and final issue is whether the court correctly instructed the jury that the government was required to prove only that Ross knew the weapon was a firearm in the general sense, as opposed to a machine gun.[1] 26 U.S.C. § 5861(d) provides that it "shall be unlawful for anyone to receive or possess a firearm which is not registered to him in the National Firearm Registration and Transfer record." 26 U.S.C. § 5845 defines "firearm" to include:

(1) a shotgun having a barrel or barrels of less than 18 inches in length; (2) a weapon made from a shotgun if such weapon as modified has overall length of less than 26 inches or a barrel or barrels of less than 18 inches in length; (3) a rifle having a barrel or barrels of less than 16 inches in length; (4) a weapon made from a rifle if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 16 inches in length; (5) any other weapon as defined in subsection E; (6) a machine gun; (7) any silencer ...; and (8) a destructive device.

Although the statutory definition of "firearm" is different than the general definition of firearm,[2] we have previously held that the government need only prove that a defendant knew the weapon was a firearm in the general sense. *See United States v.*

*Gardner,* 448 F.2d 617 (7th Cir.1971), relying on *United States v. Freed,* 401 U.S. 601, 91 S.Ct. 1112, 28 L.Ed.2d 356 (1971); *United States v. Ranney,* 524 F.2d 830 (7th Cir.1975). Those holdings dispose of Ross' final contention.

In *Gardner,* we ruled that:

It is now clear that the Government was not required to prove that the defendant had knowledge of the registration provisions of the statute ... nor that defendant knew the physical characteristics of the weapon that rendered it subject to registration, in order to convict him.... Scienter is not an element in this cause.

The case of *United States v. Freed* ... is concededly dispositive of this issue adversely to defendant's contention on this appeal. A reading of this opinion by the Supreme Court will suffice.

448 F.2d at 619.

In *Ranney,* again relying on *Freed,* we held that

[t]he Government was not required to show that the Defendant had specific knowledge that the shotgun in question was not identified by a serial number or was less than the lawful length. Proof by the Government that the Defendant knew that he possessed a firearm in the general meaning of the term was sufficient to fulfill its burden on this point.

524 F.2d at 832 (citations omitted).

The interpretation to be given *Freed* has been a matter of some controversy. *See, e.g., United States v. Anderson,* 885 F.2d 1248 (5th Cir.1989) (en banc), overruling *United States v. Vasquez,* 476 F.2d 730 (5th Cir.), *cert. denied,* 414 U.S. 836, 94 S.Ct. 181, 38 L.Ed.2d 72 (1973). We believe our prior reading of *Freed* is correct, and that the principle behind *Freed* requires that we conclude the government met its burden here.

In *Freed,* the Supreme Court reversed a district court's dismissal of an indictment

---

**1.** In addition to requiring the government to prove that the exhibit gun was possessed by Ross, was a machine gun, and was not properly registered, the given instruction also required "that the defendant knew that Government Exhibit Gun was a gun...."

**2.** Webster's Third New International Dictionary Unabridged defines a "firearm" as "a weapon from which a shot is discharged by gunpowder —usu. used only of small arms."

under § 5861. The district court had dismissed the indictment in part because of the "absence of an allegation of scienter." 401 U.S. at 607, 91 S.Ct. at 1117. The Court held that the Act did not require any specific intent or knowledge that the firearm was unregistered, and concluded that "the only knowledge required to be proved was knowledge that the instrument possessed was a firearm." *Id.* The Court went on to reject a due process challenge to the imposition of criminal liability with only that element of scienter, holding that this type of regulatory measure in the interest of public safety was probably premised on the notion that a defendant could hardly be surprised to discover that possession of the type of "firearm" described by the Act was not an innocent act. 401 U.S. at 609, 91 S.Ct. at 1118.

*Anderson* rejected our conclusion, believing that the statutory definition of "firearm" is so unorthodox that knowledge that something is a firearm in the lay sense is next to no knowledge. Hand grenades and "auto sears" (key parts in machine guns) are statutory firearms but not lay firearms; long rifles are lay firearms but not statutory firearms; only knowledge of the statutory terms yields scienter in such a world, the court concluded. *Freed* does not reject such an argument in terms; it was not presented to the Court as a possibility. But *Freed* does not support the holding of *Anderson* and similar cases.

Ross was charged with possessing an unregistered firearm. The statute, 26 U.S.C. § 5861(d), makes it a crime for anyone "to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record." The crime is possessing an unregistered firearm—not "knowingly" possessing an unregistered firearm, or possessing a weapon knowing it to be a firearm, or possessing a firearm knowing it to be unregistered. There is no knowledge component in § 5861(d). Ross' proposal is not that we *interpret* a knowledge or intent requirement in § 5861(d); it is that we *invent* one. Yet § 5861(*l*), part of the same section of the 1968 Act, contains a scienter requirement. Ordinarily courts do not interpolate requirements of a kind that have been included in some subsections and omitted in their neighbors.

Courts now and again add mental elements to statutes lacking them, on the ground that Congress could not have meant strict liability. E.g., *Liparota v. United States*, 471 U.S. 419, 105 S.Ct. 2084, 85 L.Ed.2d 434 (1985); *United States v. United States Gypsum Co.*, 438 U.S. 422, 438–43, 98 S.Ct. 2864, 2874–77, 57 L.Ed.2d 854 (1978); *Morrissette v. United States*, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952). Traditional notions of punishment require consciousness of the acts being done. But some statutes create liability without knowledge, and the principal question in *Freed* was whether § 5861(d) is such a statute. The Court held that it is—at least to the extent the prosecution need not prove that the defendant was aware that the weapon was unregistered. Although the Court did not address whether the defendant needed to know that the item was a "firearm" in either lay or legal senses, the holding that § 5861(d) dispenses with any mental state concerning one element of the offense implies that mental states are unnecessary concerning the others in the same subsection.

Omission of a mental element is the norm for statutes designed to deal with inaction. *Not* registering your gun, *not* cleaning up your warehouse, *United States v. Park*, 421 U.S. 658, 95 S.Ct. 1903, 44 L.Ed.2d 489 (1975), and like "acts" are done without thinking. Often the omission occurs because of lack of attention. Requiring the prosecutor to prove a mental state in crimes of omission frequently precludes prosecution. Yet Congress may have sound reasons for requiring people to investigate and act, objectives that cannot be achieved if the courts add mental elements to the statutes.

Hardship there doubtless may be under a statute which ... penalizes the transaction though consciousness of wrongdoing be totally wanting. Balancing relative hardships, Congress has preferred to place it upon those who have at least the opportunity of informing themselves of

the existence of the conditions imposed for the protection of [the public] before sharing in illicit commerce, rather than to throw the hazard on the innocent public who are entirely helpless.

*United States v. Dotterweich*, 320 U.S. 277, 284–85, 64 S.Ct. 134, 138, 88 L.Ed. 48 (1943); see also *United States v. Balint*, 258 U.S. 250, 42 S.Ct. 301, 66 L.Ed. 604 (1922), which said of a regulatory statute: "Its manifest purpose is to require every person dealing in drugs to ascertain at his peril whether that which he sells comes within the inhibition of the statute, and if he sells the inhibited drug in ignorance of its character, to penalize him."

Many persons must own old guns that may or may not be capable of automatic fire. Congress wants the automatic guns registered. That is going to happen only if the onus is on the owner. The approach of *Gardner* and *Ranney* requires the owner to investigate, and so leads to compliance with the law. The approach of *Anderson* converts ignorance into bliss. Why would any owner investigate, if all that could happen would be (a) burdensome registrations; or (b) forfeiture of the weapon if the defendant turns out to be ineligible to register it because of a prior conviction; or (c) a conviction for failure to register. Rational people would turn a blind eye, which would defeat the purpose of the statute.

"Ignorance of the law is no excuse" is one of the most venerable maxims of criminal law—not because most persons *know* the law, but because laws seek to change behavior. Compliance increases if ignorance is costly. Learning the law in order to comply must have rewards. If conviction is impossible unless the defendant knows the statutory scheme, then persons who take the first step toward compliance (learning the rules) will go to jail if they do not complete their compliance, while persons who take no steps at all toward compliance are immune from the law's commands. That is not a sound approach as a norm.

Reading into the statute a requirement of knowledge that the object is a lay firearm, *or* a statutory firearm (the auto sear, for example), *or* a dangerous device apt to be regulated (hand grenades and bazookas, for example), makes sense. Knowledge of this kind is what puts people on inquiry. There is no sense in prosecuting someone who buys a cheesecake that, unbeknownst to him, contains hand grenades along with huckleberries. Nothing about a cheesecake calls for factual and legal research. Once a person knows that he possesses the sort of device that is extensively regulated, however, it serves the statutory scheme to cast on that person the risk of inaccuracy in evaluating facts and law. A majority of the appellate courts see things this way. *United States v. DeBartolo*, 482 F.2d 312, 316–17 (1st Cir.1973); *United States v. Shilling*, 826 F.2d 1365, 1368 (4th Cir.1987); *Morgan v. United States*, 564 F.2d 803, 806 (8th Cir.1977); *United States v. Mittleider*, 835 F.2d 769, 774 (10th Cir.1987); *United States v. Gonzalez*, 719 F.2d 1516, 1522 (11th Cir.1983). We accept the government's concession that the prosecution must establish this kind of knowledge, and we adhere to the majority view that it need not prove more.

For all of the foregoing reasons, the judgment of the district court is

AFFIRMED.

MANION, Circuit Judge, dissenting.

I agree with the panel that Ross' first three arguments are without merit. But as to the fourth issue I would reverse and follow the Fifth Circuit, thus overruling our prior cases interpreting 26 U.S.C. § 5861(d). *See United States v. Anderson*, 885 F.2d 1248 (5th Cir.1989) (*en banc*).

Most handguns, rifles, and shotguns, though firearms in common terms, are not necessarily "firearms" as defined by the Act. Furthermore, mines and hand grenades *are* "firearms" under the Act (destructive devices),[1] even though they are

---

1. Section 5845(f) provides that the term "destructive device" includes

(1) any explosive, incendiary, or poison gas (A) bomb, (B) grenade, (C) rocket having a propellant charge of more than four ounces,

not firearms in the usual sense. Although the Act requires registration of "firearms," the statute excludes some weapons which really are firearms and includes some weapons which are not. Thus, Congress stripped the word "firearm" of its ordinary meaning and assigned it an entirely new definition for purposes of the National Firearms Act.

We held in *United States v. Gardner*, 448 F.2d 617 (7th Cir.1971), and again in *United States v. Ranney*, 524 F.2d 830 (7th Cir.), *cert. denied*, 424 U.S. 922, 96 S.Ct. 1130, 47 L.Ed.2d 330 (1975), that the government must prove that a defendant "knew that he possessed a firearm in the general meaning of the term...."[2] *Ranney*, 524 F.2d at 832. These cases rejected the contention that a defendant must have known the weapon was a "firearm" as defined by the Act. *Gardner* declared that the government was not required to prove *inter alia* "that the defendant knew the characteristics of the weapon that rendered it subject to registration, in order to convict...." *Gardner* rested its holding on *United States v. Freed*, 401 U.S. 601, 91 S.Ct. 1112, 28 L.Ed.2d 356 (1971), simply stating: "A reading of this opinion by the Supreme Court will suffice." 448 F.2d at 619. In addition to following *Freed*, *Ranney* relied on *Gardner* and *United States v. Vasquez*, 476 F.2d 730, 732 (5th Cir. 1970), which has since been overruled by the Fifth Circuit sitting *en banc* in *United States v. Anderson*, *supra*, 885 F.2d 1248.

*Ranney* required only that the defendant know he possessed a firearm as generally defined. But the context of that conclusion casts some light on the circumstances that caused the court to avoid further analysis. After quoting *Freed* that "one would hardly be surprised that possession of hand grenades is not an innocent act," the *Ranney* court stated:

> We believe that this section may well too be premised on the theory that one would hardly be surprised to learn that possession of a sawed-off shotgun is not an innocent act. Therefore, we hold that the Government was not required to show that the Defendant had specific knowledge that the shotgun in question was not identified by a serial number or was less than the lawful length. *Proof by the Government that the Defendant knew that he possessed a firearm in the general meaning of the term was sufficient to fulfill its burden on this point.*

524 F.2d at 832 (emphasis added).

I agree that a person should not be surprised to learn possession of an unregistered sawed-off shotgun (or a machine gun, for that matter) is not an innocent act. This is why *Freed* imposed strict liability on the issue of *registration*. However, what if the person does not know he possesses a sawed-off shotgun, believing it instead to be a common pistol? *Gardner* involved a pistol which fired shotgun shells. Should he be surprised to learn he is violating the law, when the Act does not require the registration of most pistols? Under *Ranney*, mere knowledge that the pistol is a firearm in the general sense (it clearly is) is enough to convict. The owner can be convicted even though he believes his weapon is not the type that needs to be registered under the Act.

*Gardner* held that *Freed* was dispositive on the question of knowledge. The issue in *Freed*, however, was whether the Act requires "specific intent or knowledge that the hand grenades were unregistered." 401 U.S. at 607, 91 S.Ct. at 1117. We are not faced with the question of registration in this case. Rather, the issue here is to

---

(D) missile having an explosive or incendiary charge of more than one-quarter ounce, (E) mine, or (F) similar device;

  (2) any type of weapon by whatever name known which will, or which may be readily converted to, expel a projectile by the action of an explosive or other propellant, the barrel or barrels of which have a bore of more than one-half inch in diameter, except a shotgun or shotgun shell which the Secretary finds is generally recognized as particularly suitable for sporting purposes; and

  (3) any combination of parts either designed or intended for use in converting any device into a destructive device....

**2.** *Gardner* involved the possession of a smooth-bore pistol designed to shoot shotgun shells. *Ranney* involved the possession of a sawed-off shotgun.

what extent the Act requires a defendant's knowledge concerning the nature of the weapon—did he simply have to know it was a gun (firearm) or did he have to know it was a machine gun? The government concedes, as did the *Gardner* and *Ranney* panels, that the Act does require some knowledge as to the nature of the unregistered weapon.[3] The question here, which *Freed* did not address, is whether a defendant's knowledge should be that the weapon is a firearm in the ordinary sense of the term, or a machine gun as more specifically defined by the Act.[4]

"[A]n intent to perform the proscribed conduct is a necessary element of any serious criminal offense." *United States v. Busic*, 592 F.2d 13, 21 (2d Cir.1978) (citing *Morrissette v. United States*, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952)). The "proscribed conduct" in this case is *not* possessing a firearm in the ordinary sense; it is possessing a "firearm" as defined by the Act. Thus the knowledge requirement of *Ranney* and *Gardner* (that the weapon is a firearm in the usual sense) has no firm connection to the conduct actually prohibited (the possession of a "firearm" as defined by the Act).

To hold that the Act requires knowledge only that the weapon is a firearm in the ordinary sense can lead to strange results. For instance, the Act forbids possession of unregistered hand grenades. A hand grenade is obviously a dangerous weapon, but it is not a firearm in the ordinary sense of the term even though it is clearly a "firearm" under the Act. Conceivably, a defendant who knew he possessed a hand grenade could avoid conviction by arguing that he didn't know the hand grenade was a firearm (gun) in the general sense. *See Anderson*, 885 F.2d at 1251, n. 5 (discussing the "strange consequences" of requiring knowledge that objects are firearms in the general sense, especially when the objects are "silencers or land mines, which are not firearms in the general sense at all[.] Are the elements of proof to be deemed different where they are concerned?").

The Fifth, Sixth, and Ninth Circuits originally found (at least in dicta) that the Act requires knowledge that the weapon is a firearm in the ordinary sense, but since have held that the Act requires knowledge that the weapon is a "firearm" under the unique terms of the Act. Cf. *Anderson, supra; United States v. Williams,* 872

3. No one contends that this is a strict liability crime. *See United States v. International Minerals & Chemical Corp.*, 402 U.S. 558, 560, 91 S.Ct. 1697, 1699, 29 L.Ed.2d 178 (1971). In *United States v. Carmany*, 901 F.2d 76 (7th Cir.1990), we stated that "violation of the Act is a strict liability crime ...," *id.* at 78 n. 2, but we meant it only in the sense that the Act "does not require intent or knowledge that the firearms were *unregistered.*" (Emphasis added.) *Id.* As Justice Brennan noted in his concurrence in *Freed*:

To convict appellees of possession of unregistered hand grenades [in violation of 26 U.S.C. § 5861(d) ], the Government must prove three material elements: (1) that appellees possessed certain items; (2) that the items possessed were hand grenades; and (3) that the hand grenades were not registered. The Government and the Court agree that the prosecutor must prove knowing possession of the items and also knowledge that the items possessed were hand grenades. Thus, while the Court does hold that no intent at all need be proved in regard to one element of the offense—the unregistered element of the offense—knowledge must still be proved as to

the other two elements. Consequently, the National Firearms Act does not create a crime of strict liability as to all its elements.... 401 U.S. at 612, 91 S.Ct. at 1120 (Brennan, J., concurring).

We also stated in *United States v. Taylor*, 728 F.2d 864 (7th Cir.1984), that "proof that a person actually or constructively possessed an unregistered firearm, in violation of 26 U.S.C. § 5861(d), is sufficient proof that the person 'knowingly possessed' the unregistered firearm in question." *Id.* at 869. However, as Justice Brennan noted in *Freed, supra,* knowing possession of the firearm and knowledge that the item was a firearm are two distinct elements.

4. The *Freed* Court did note that "lower court decisions [had held] the only knowledge required to be proved was knowledge that the instrument was a firearm." 401 U.S. at 607, 91 S.Ct. at 1117. However, the Court never distinguished between the Act's definition of "firearm" and the dictionary definition, as this was not an issue in *Freed.* The government apparently conceded in *Freed* that it had to prove knowledge the weapon was a "firearm" in the Act sense. *See Anderson, supra,* 885 F.2d at 1252 & n. 6.

F.2d 773, 774–77 (6th Cir.1989) ("The Court ... holds that the government was required to prove defendants' knowledge of the weapon's automatic quality."); *United States v. Herbert,* 698 F.2d 981, 987 (9th Cir.1983) ("[I]n a situation in which there were no external indications on the weapon that would 'alert one to the likelihood of regulation,'" the government must prove knowledge that the weapon was automatic.). We should follow that trend.

I conclude the district court erred in instructing the jury that the government need only prove that Ross knew the machine gun was a firearm in the ordinary sense. That error was not harmless. Unquestionably Ross knew he possessed a "gun." Under the questioned instruction that is all the jury had to find. But did he know he possessed a machine gun—a weapon "designed to shoot, or ... be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger"? Perhaps, but the government should have been required to prove he knew it, just as it had to prove the exhibit gun came under the machine gun definition.

The panel opinion concludes that "[r]eading into the statute a requirement of knowledge that the object is a lay firearm, *or* a statutory firearm ... *or* a dangerous device apt to be regulated (hand grenades and bazookas ...) makes sense." But if the government is going to read the statute in that manner, it must be consistent in charging a defendant with knowing possession, whether he possesses a bazooka or a machine gun. The jury may well reject Ross' claim that the exhibit gun was an inoperable replica with a lead plug and instead believe the weapons expert who testified that it could be restored to an automatic weapon in several hours. But if all Ross needed to know is that he possessed a gun, we may as well stop where the statute did and apply strict liability.

Although the facts may distinguish this case to some extent from *Gardner* and *Ranney,* we should overrule the general

principle set down in those cases—that the government only had to prove the defendant knew he possessed a firearm in the general meaning of the term. I believe the government should be required to prove that Ross knew the gun at issue was a machine gun as defined by the Act (or some other weapon covered by the Act).[5] I would reverse the judgment of the district court and remand for a new trial.

---

**5.** The government does not have to prove Ross knew he was violating the law. Section 5861(d) does not require specific intent. *Herbert, supra,* 698 F.2d at 986.