**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Craig WILLIAMS, (87–1898) and
Craig DeFeyter, (87–1899),
Defendants–Appellants.**

**Nos. 87–1898, 87–1899.**

United States Court of Appeals,
Sixth Circuit.

Argued Aug. 11, 1988.

Decided April 19, 1989.

Charles S. Rominger, Grand Rapids, Mich., for Craig Williams.

Michael MacDonald, Asst. U.S. Atty., Grand Rapids, Mich., Don Davis, argued, for U.S.

Dennis C. Kolenda, argued, Grand Rapids, Mich., for Craig DeFeyter.

Before KEITH and NELSON, Circuit Judges, and DUGGAN,* District Judge.

DUGGAN, District Judge.

Defendants-appellants DeFeyter and Williams appeal their convictions following conditional guilty pleas, Fed.R.Crim.P. 11(a)(2), to willfully and knowingly transferring an unregistered fully automatic weapon in violation of 26 U.S.C. § 5861(e) (hereinafter "Act").

This Court is asked to determine whether, as an element of the offense, proof of the defendants' knowledge of the weapon's fully automatic nature was required. We conclude that, on the facts presented, it was incumbent on the government to demonstrate such knowledge.

Defendant DeFeyter operated an Army surplus store and was licensed to buy and sell semi-automatic weapons. Prior to April 5, 1985, DeFeyter had purchased a

---

* Honorable Patrick J. Duggan, U.S. District Judge for the Eastern District of Michigan, sitting by    designation.

number of Clayco AKS semi-automatic sport rifles, which had been inspected and approved by the Bureau of Alcohol, Tobacco and Firearms. Because the guns were packed with thick oil and sealed inside opaque plastic bags when they were shipped, DeFeyter did not inspect the rifles which he ultimately sold "in the grease" meaning exactly as they had been imported into the United States.

On April 5, 1985, DeFeyter received a telephone call from Larry Nichols who wanted to buy an AKS Sporting rifle. Although DeFeyter had sold all those that he had previously acquired, he decided to contact defendant Williams who had purchased several of the Clayco rifles from DeFeyter. Upon learning that Williams had one for sale, DeFeyter arranged for Nichols and Williams to meet. DeFeyter introduced Williams and Nichols but was not present when the sale took place. Nichols in turn, sold the weapon to an undercover agent. An expert subsequently determined that the weapon had been converted to a fully automatic rifle by internal modifications which did not change the external appearance of the gun.

On appeal, DeFeyter and Williams contend that the trial court failed to establish a sufficient factual basis for the pleas. Specifically, defendants claim they did not know that the weapon transferred had been converted from a legal semi-automatic weapon to a fully automatic weapon. Defendants insist that the Act requires knowledge that the item possessed was a machine gun. The government contends that the Act only requires a showing that a defendant have knowledge that what he possessed was a firearm within the general meaning of the term.

26 U.S.C. § 5861(e) makes it unlawful for any person to transfer a firearm that has not been registered in accordance with the provisions of 26 U.S.C. § 5841(b) of the National Firearms Act. The term "firearm" is narrowly defined in section 5845(a) to include short-barrel shotguns and rifles, sawed-off shotguns and rifles, machine

guns, silencers, destructive devices and "any other weapon," as defined in 26 U.S.C. § 5845(e).

The term "machine gun" is defined in subsection (b) of section 5845 as follows:

The term "machinegun" means any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.

Both parties rely heavily on *United States v. Freed,* 401 U.S. 601, 91 S.Ct. 1112, 28 L.Ed.2d 356 (1971), which discusses the requirement of scienter in the context of § 5861(d).[1] The defendants in *Freed* were indicted for possessing and conspiring to possess hand grenades. The trial court dismissed the indictment citing the absence of an allegation of specific intent, i.e., knowledge that the grenades were unregistered. Reversing the trial court, the United States Supreme Court stated:

The Act requires no specific intent or knowledge that the hand grenades were unregistered. It makes it unlawful "to receive or possess a firearm which is not registered to him."

401 U.S. at 607, 91 S.Ct. at 1117 (footnote omitted).

*Freed* presupposes proof of knowledge that one is dealing with an instrumentality from which one can infer that regulation is likely, an observation shared by the court in *United States v. DeBartolo,* 482 F.2d 312 (1st Cir.1973):

In *Freed,* it is true, the [C]ourt assumed that the Government would have to prove that the defendant knew the grenade was a grenade, hence a "firearm".

---

1. Section 5861(d) makes it unlawful to "receive or possess a firearm which is not registered ... in the National Firearms Registration and Transfer Record [.]" 26 U.S.C. § 5861(d).

*Id.* at 316. *See also United States v. Thomas,* 531 F.2d 419, 422 (9th Cir.1976), *cert. denied,* 425 U.S. 996, 96 S.Ct. 2210, 48 L.Ed.2d 821 (1976). Such assumption was expressly articulated by Justice Brennan in his concurring opinion:

> To convict appellees of possession of unregistered hand grenades, the Government must prove three material elements: (1) that appellees possessed certain items; (2) that the items possessed were hand grenades; and (3) that the hand grenades were not registered. The Government and the Court agree that the prosecutor must prove knowing possession of the items and also knowledge that the items possessed were hand grenades. Thus, while the Court does hold that no intent at all need be proved in regard to one element of the offense—the unregistered status of the grenades—knowledge still must be proved as to the other two elements. Consequently, the National Firearms Act does not create a crime of strict liability as to all its elements. It is no help in deciding what level of intent must be proved as to the third element to declare that the offense falls within the "regulatory" category.

*Freed,* 401 U.S. at 612–613, 91 S.Ct. at 1120 (Brennan, J., concurring).

In the instant matter, the second element is implicated. The issue, therefore, for this Court to resolve is whether the defendants must have had knowledge that the weapon transferred was a "firearm" within the meaning of the Act, as distinguished from a firearm as the term is more commonly used.

Because all grenades are classified as "firearms", see 26 U.S.C. § 5845(a)(8), the *Freed* court had no occasion to determine whether knowing possession of a grenade "would give rise to a duty to inspect to see if it was the kind of grenade regulated." *Thomas, supra,* at 422.[2] Accordingly, this Court looks to other reported decisions for guidance.

Of the circuit courts which have voiced an opinion, the great majority found the intent element satisfied if the accused knew the item to be a firearm within the general meaning of that term. *See, e.g., DeBartolo, supra; United States v. Shilling,* 826 F.2d 1365 (4th Cir.1987) *cert. denied,* —— U.S. ——, 108 S.Ct. 777, 98 L.Ed. 2d 863 (1988); *United States v. Vasquez,* 476 F.2d 730 (5th Cir.1973); *United States v. Ranney,* 524 F.2d 830 (7th Cir.1975), *cert. denied,* 424 U.S. 922, 96 S.Ct. 1130, 47 L.Ed.2d 330 (1976); *Morgan v. United States,* 564 F.2d 803 (8th Cir.1977); *United States v. Gonzalez,* 719 F.2d 1516 (11th Cir.1983), *cert. denied,* 465 U.S. 1037, 104 S.Ct. 1312, 79 L.Ed.2d 710 (1984). *Cf. Thomas, supra.*

*United States v. Herbert,* 698 F.2d 981 (9th Cir.1983), *cert. denied,* 464 U.S. 821, 104 S.Ct. 87, 78 L.Ed.2d 95 (1983) stands as the notable exception. In *Herbert,* the court, after acknowledging the prevailing rule in the Ninth Circuit to the effect that a defendant need not know all the characteristics of the weapon which subject it to regulation, *id.* at 986 ("[i]t is enough to prove he knows that he is dealing with a

---

**2.** The Court notes with interest the references in *Freed* to *Sipes v. United States,* 321 F.2d 174 (8th Cir.1963), *cert. denied* 375 U.S. 913, 84 S.Ct. 208, 11 L.Ed.2d 150 (1963) and *United States v. Decker,* 292 F.2d 89 (6th Cir.1961), *cert. denied,* 368 U.S. 834, 82 S.Ct. 58, 7 L.Ed.2d 36 (1961). In the majority opinion, Justice Douglas announced the following:

> By the lower court decisions at the time [the Act was amended] the only knowledge required to be proved was knowledge that the instrument was a firearm. *See Sipes v. United States,* 8 Cir., 321 F.2d 174, 179, and cases cited.

*Freed,* 401 U.S. at 607, 91 S.Ct. at 1117, Justice Brennan's concurrence amplified this thought:

> The cases [decided prior to the enactment of the amended law] held that a conviction of an individual of illegal possession of unregistered firearms had to be supported by proof that his possession was "willing and conscious" and that he knew the items possessed were firearms. E.g., *Sipes v. United States,* 321 F.2d 174, 179 (CA 8 1963); *United States v. Decker,* 292 F.2d 89 (CA 6 1961). Congress did not disapprove these cases and we may therefore properly infer that Congress meant that the Government must prove knowledge with regard to the first two elements of the offense under the amended statute.

*Id.* at 614, 91 S.Ct. at 1120–21 (Brennan, J., concurring).

dangerous device of such type as would alert one to the likelihood of regulation") (citations omitted), found the facts before it to be beyond the purview of the rule:

> In this case, the firearms involved were weapons that had been only internally modified, and from the exterior looked like perfectly legal semi-automatic pistols. No markings had been interfered with and no external modifications had been made. Legal firearms are quite prevalent in today's society. While a sawed-off shotgun or a short barrel rifle, *DeBartolo,* 482 F.2d at 416; *Thomas,* 531 F.2d at 421–22, may be a dangerous device of such type as would alert one to the likelihood of regulation, we do not find that an ordinary firearm that is internally and undetectably modified [3] to be automatic yet legal in appearance and markings falls within this category. If the law was as stated in this instruction, then any person who possessed an internally modified weapon with absolutely no knowledge or method of verification of the modification would be in violation of the law. We are sure Congress did not intend that this statute be so draconian. Accordingly, we hold that, in a situation in which there were no external indications on the weapon that would "alert one to the likelihood of regulation," the district court's instruction was erroneous.

698 F.2d at 986–987 (footnote added).

Although bound by a prior decision to the contrary, one panel of the Fifth Circuit has recently expressed a similar view. In *United States v. Anderson,* 853 F.2d 313 (5th Cir.1988), *reh'g granted,* 860 F.2d 166 (1988) (en banc), the court indicated that if the case before it were one of first impression, "we might well be inclined to adopt the position taken by the Ninth Circuit in *Herbert."* 853 F.2d at 317. Several reasons were offered. First, the Court discussed *Freed, supra:*

> [T]o require—as *Freed* implicitly does—that the defendant know that what he possesses is a hand grenade is merely to require that the defendant know that what he possesses has the physical characteristics which, under the law (whether or not the defendant knows that the law so provides), mandate its registration. The same reasoning applied to a pistol leads to the conclusion that the defendant must know that it is fully automatic..... That an item is a "firearm" within *common* parlance is *wholly irrelevant* under the terms of the Act. The Act does not purport to create any character of presumption or regulation about items which are *generally* known as "firearms." Rather, it defines "firearm" in a very specific and limited manner—so as to *exclude* the *overwhelming majority* of guns sold.... And, it deals *only* with firearms *as so defined.*

*Id.* at 318 (footnote omitted) (emphasis in original).

Second, the court raised constitutional concerns:

> [A]llowing a person to be convicted of a very serious offense like the one involved here, without requiring knowledge of such facts as would alert a reasonable person to the likelihood of regulation, ... might be inconsistent with the due process clause of the Fifth Amendment.

*Ibid.*

Finally, the court stated that as a matter of statutory construction, "requiring some degree of knowledge of the *facts* that make a weapon a "firearm" within the meaning of the Act is preferable to not requiring such knowledge." *Ibid.* (emphasis in original). The court elaborated:

> In the absence of an express or implied congressional purpose to subject other-

---

**3.** The government in an effort to discount *Herbert,* challenges the suggestion that semi-automatic weapons converted to fully automatic by virtue of internal modifications escape ready detection. All automatic weapons, it argues, are susceptible of a simple test. When loaded, ... depression and holding of the trigger discloses the automatic nature of the weapon.

Appellee's brief at 23. As the government concedes, however, "the ability to test is *not* the issue [,]" *ibid.* (emphasis in original), defendants' knowledge is. Here defendants' knowledge of the weapon's automatic propensity was not demonstrated.

wise innocent purchasers or possessors to the very serious penalties contained in section 5871, we believe that the "time-honored interpretive guideline" found in the rule of lenity should be applied in interpreting section 5861(d)....

*Id.* at 319.

Despite these considerations, the court held, consistent with the Fifth Circuit precedent, that section 5861(d) only requires knowledge that the weapon possessed was a firearm within the general meaning of the term. *Ibid.* (*citing Vasquez, supra*).

The Court finds *Herbert* and the reasoning in *Anderson* to be persuasive and, accordingly, holds that the government was required to prove defendants' knowledge of the weapon's automatic quality. In so doing, we believe our decision comports with the due process concerns advanced in *Morissette v. United States,* 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952) and refined in later cases such as *United States v. Wulff,* 758 F.2d 1121 (6th Cir.1985) which opined:

> [W]e must decide whether the absence of a requirement that the government prove some degree of scienter violates the defendant's right to due process.
>
> We believe that the proper guidance for the resolution of this issue can be found in Judge, now Justice, Blackmun's opinion in *Holdridge, supra.* Extrapolating from *Holdridge,* the proper test would appear to be as follows: The elimination of the element of criminal intent does not violate the due process clause where (1) the penalty is relatively small, and (2) where conviction does not gravely besmirch.

758 F.2d at 1125.

The *Wulff* court concluded that a felony penalty which carries a maximum sentence of 2 years imprisonment is not a "relatively small penalty."

A conviction for violation of 26 U.S.C. § 5861(e) subjects a defendant to imprisonment of not more than ten years and/or a fine of not more than $10,000. "This is not, in this Court's mind, a relatively small penalty." *Ibid.* In addition, as the *Wulff* court noted, a felony conviction irreparably damages one's reputation and in Michigan, a felony conviction will affect an individual's right to sit on a jury and his right to possess a gun. This latter deprivation is not insignificant inasmuch as gun dealing factored prominently in the lives of both defendants.

We agree with Judge Hufstedler, dissenting in *Thomas, supra* who observed:

> Millions of Americans possess different varieties of hand guns and rifles without any consciousness of wrongdoing, or any suspicion that these weapons are as potentially dangerous as narcotics.

*Thomas,* 531 F.2d at 423 (Hufstedler, J., dissenting).

Our holding, we further note, is not at odds with *U.S. v. Cowper,* 503 F.2d 130 (6th Cir.1974), *cert. denied,* 420 U.S. 930, 95 S.Ct. 1133, 43 L.Ed.2d 403 (1975). In *Cowper,* the defendant spent eighteen months modifying a M–1 carbine so that it could fire semi-automatically and automatically. In fact, then, the government demonstrated that the defendant knew of the weapon's automatic capability, unlike the instant appeal. While there is language in the opinion which cannot be easily reconciled with the conclusion we draw, *see* 503 F.2d at 132–133 ("[w]e believe ... that *United States v. Freed* ... does not impose the requirement that a defendant charged with knowing possession of a firearm also be proved to know that the firearm is an automatic rifle"), such language, given the facts of *Cowper,* is *dictum.*

For the reasons expressed above, we hold that the government was required to show that defendants knew that a "firearm" as legislatively defined was being transferred.[4] No evidence having been offered to establish the existence of such knowledge, defendant's guilty pleas must be vacated.

The Judgment of the district court is reversed.

---

4. In light of this holding, it is not necessary to address defendant DeFeyter's contention that he did not "transfer" the weapon within the meaning of 26 U.S.C. § 5861(e).