UNITED STATES of America,
Plaintiff–Appellee,

v.

Harold E. STAPLES, Defendant–
Appellant.

No. 91–5033.

United States Court of Appeals,
Tenth Circuit.

Aug. 3, 1992.

Susan W. Pennington, Asst. U.S. Atty. (Tony M. Graham, U.S. Atty. and Neal B. Kirkpatrick, Asst. U.S. Atty., with her on the brief), for plaintiff-appellee.

Clark O. Brewster of Brewster and Shallcross, (Jennifer L. DeAngelis, with him on

the brief), Tulsa, Okl., for defendant-appellant.

Before ANDERSON and EBEL, Circuit Judges, and ANDERSON,* District Judge.

STEPHEN H. ANDERSON, Circuit Judge.

Harold E. Staples, III, appeals from his conviction on one count of unlawful possession of an unregistered machinegun in violation of 26 U.S.C. §§ 5841, 5861(d), and 5871. Staples contends that the district court erred: (1) by failing to instruct the jury that scienter is an element of unlawful possession under 26 U.S.C. § 5861; (2) by excluding certain documentary evidence under Fed.R.Evid. 401; and (3) by refusing to submit to the jury his proffered instruction on the word "automatically" as it is used in 26 U.S.C. § 5845(b). On its own motion, the court has also raised the issue of the constitutionality of § 5861(d) as a result of our recent opinion in *United States v. Dalton*, 960 F.2d 121 (10th Cir. 1992). For the reasons stated below, we affirm.

## BACKGROUND

On December 29, 1989, members of the police department of Jenks, Oklahoma, and the Bureau of Alcohol, Tobacco, and Firearms (BATF) conducted a search of Staples' home pursuant to a warrant. Among the items seized was an SGW .223 caliber Model X M14A1 assault rifle ("AR–15"), which Staples had purchased on April 9, 1983. Appellant's App. Vol. I at 185, Tab K. There is no dispute that the AR–15 had never been registered to Staples under the National Firearms Act (NFA), 26 U.S.C. § 5841, as a registerable automatic weapon.

At the time of the search, the AR–15 contained neither a bolt carrier nor a magazine. Numerous weapons parts were found in the room where the AR–15 was stored including the bolt carrier for an M–16 military rifle. The M–16 bolt carrier

was discovered in the pocket of a briefcase located in the room.

BATF agents examined the AR–15 in their Washington, D.C., laboratory. The examination showed that the AR–15 had been assembled with certain internal parts originally manufactured for fully automatic military rifles like the M–16 including the hammer, disconnector, and trigger. The weapon did not, however, have an auto-sear. The sole function of that part is to permit automatic fire. The gun had a three-position selector switch. BATF Agent Joseph McLaughlin testified at trial that an external pin or "stop" on the side of the weapon's receiver had been removed by filing. This external modification enabled a user of the weapon to rotate the selector switch to the full automatic position.

When the BATF agents cleaned and oiled the AR–15, inserted an appropriate magazine, used the M–16 bolt carrier found in the same room as the AR–15, loaded the weapon with "soft-primer" ammunition, and rotated the selector switch to full automatic, the weapon fired more than one shot with a single pull of the trigger.

After a two-day trial, the jury found Staples guilty of possession of the unregistered AR–15 while acquitting him on a separate count of possessing an unregistered M–1 rifle also found in the search. Staples filed motions for acquittal at the end of the government's case and following the verdict. Both were denied. Consistent with the federal sentencing guidelines, the court sentenced Staples to five years probation with certain conditions, a $5,000 fine, and a $50 special assessment. The sentence has been stayed pending the outcome of this appeal.

## DISCUSSION

I. CONSTITUTIONALITY OF STAPLES' CONVICTION UNDER 26 U.S.C. § 5861(d)

In *United States v. Dalton*, 960 F.2d 121 (10th Cir.1992), an opinion issued

---

* The Honorable Aldon J. Anderson, Senior Judge, United States District Court for the District of Utah, sitting by designation.

during the pendency of this appeal, we held a prosecution under § 5861(d) to be unconstitutional because that statute required the registration of a firearm which the government refused to register due to the ban on machineguns imposed after May 19, 1986 by 18 U.S.C. § 922(o).[1] Summarizing our position, we stated:

> Dalton was found guilty of possessing and transferring an unregistered firearm in violation of the National Firearms Act, I.R.C. §§ 5861(d), (e) (NFA). A separate criminal statute prohibits the possession of *any* machinegun made after that statute's effective date in 1986. 18 U.S.C. § 922(o)(1988). It is undisputed that the government will not permit the registration of machineguns covered by section 922(o), and will not accept the tax which would otherwise be required by the registration requirements of the National Firearms Act. Dalton contends that due process bars his conviction under a statute which punishes his failure to register when that registration is precluded by law. We agree and reverse.
>
> . . . .
>
> As a result of section 922(o), compliance with section 5861 is impossible.

*Dalton*, 960 F.2d at 122, 126.

Because of the general similarity of the prosecution in this case with *Dalton*, and the fundamental nature of the issue involved, we raised the constitutional issue and permitted supplemental briefing by the parties. Since this is a potentially controlling issue, we address it first, applying the plain error standard of review.

After reviewing the record and arguments of the parties, we conclude that *Dal-*

*ton* is distinguishable. *Dalton* concerned a weapon that was possessed for the first time in 1989, three years after the May 19, 1986, effective date of 18 U.S.C. § 922(o); whereas the gun in this case was purchased in 1983. Section 922(o)(2)(B) specifically exempts machineguns which were lawfully possessed (i.e., registered) prior to May 19, 1986. There is no dispute that machineguns *could* be registered prior to that date; thus, the reasoning in *Dalton* does not apply to the charge against Staples.

Neither of the parties address this distinction. The government contends mainly that *Dalton* is in error. Appellee's Suppl. Br. at 6. However, even if *Dalton* applied to this case we could not overrule a previous opinion of this court. *United States v. Spedalieri*, 910 F.2d 707, 710 n. 3 (10th Cir.1990). En route to its conclusion, the government argues that § 5861(d) remains valid after *Dalton* because there are reasons the court did not cite to support upholding the provision, including Congress' power to regulate the interstate movement of machineguns pursuant to the Commerce Clause. Appellee's Suppl. Br. at 3, 5.

These arguments completely ignore the issue here—the requirement and date of registration of Staples' AR–15. Our statement in *Dalton* that since 1986 the government has refused to register machineguns (apparently for *any* reason, whether regulatory or revenue), was confirmed by testimony in this case by the government's witness, BATF Agent McLaughlin. He testified that the government would not register machineguns after the May 19, 1986 effective date of § 922(o).[2]

---

1. 18 U.S.C. § 922(o) provides in pertinent part:
   (o)(1) Except as provided in paragraph (2), it shall be unlawful for any person to transfer or possess a machinegun.
   (2) This subsection does not apply with respect to—

   . . . . .

   (B) *any lawful transfer or lawful possession of a machinegun that was lawfully possessed before the date this subsection takes effect.*
   18 U.S.C. § 922(o) (emphasis added). "The date this subsection takes effect" for § 922(o)(2)(B) is May 19, 1986. *See* Pub.L. 99–308, § 110(c).

2. Q: So, the day before his house was searched, he couldn't have even registered the gun then?
   A: No, sir.
   Q: The gun wasn't registerable by him, was it?
   A: No, sir.
   Q: ... The day before anything ever happened, he couldn't have complied with the law if he wanted to, could he?
   A: No, because the law was amended on May 1986 which forbade the private ownership of newly manufactured machine guns to civilians.

Likewise, Staples' arguments miss the point. He merely "adopts Dalton's argument *in toto* that due process bars his conviction under a statute which punishes his failure to register when that registration is precluded by law." Appellant's Suppl. Br. at 7–8.

Staples does not, and, as explained above, cannot, argue that *Dalton* calls into question the validity of the nexus between § 922(*o*) and 26 U.S.C. § 5861(d) for any time *prior* to May 19, 1986.

His basic defense at trial was not that he could not register a machinegun, but that his weapon was not a machinegun under 26 U.S.C. § 5845 and, thus, was not subject to registration under the NFA. Alternatively, he contended that if his weapon was a machinegun, he did not know it; therefore, he lacked the requisite scienter to violate the registration requirement. *See* Reply

> Q: If he owned the gun prior to 1986 and it fired in semi-automatic fashion but owned it after that act that you're talking about, how could—he couldn't register it, could he?
> A: Well, something obviously happened to the weapon from the time that he owned it until the time it was seized. Because if it was semiautomatic before May 16th, 1986, there would have been no need to register it because it was a legal legitimate firearm.
> Q: He could have lawfully possessed it prior to the act taking effect?
> A: Certainly. As long as it didn't function automatically, no problem.
> Q: But if it then functioned automatically through this hammer follow down concept after 1986, he couldn't register it, could he?
> A: No. Because at that point, sir, it was contraband.
> Appellant's App. Vol. II at 350–52, Tab Q.

**3.** The district court clearly understood this point as is obvious in its colloquy with Assistant United States Attorney Neal Kirkpatrick at a motions hearing only four days before the trial:
> THE COURT: *You would agree that the issue of when the stop was taken off the gun is a fact that goes to the jury, don't you.*
> MR. KIRKPATRICK: *They can argue it if they want.*
> THE COURT: *If the stop was there at the time the gun was in the possession of the defendant it was not an automatic weapon.*
> MR. KIRKPATRICK: *I would agree, yes, sir.*
> THE COURT: All right. All right.
> . . . .
> THE COURT: [S]uppose Mr. Gilbert with Mr. Brewster looking over his shoulder finds that there is a regulation in effect that would prohibit the registering of this gun.

Br. at 14–15. Staples had ample opportunity at trial to demonstrate that he complied with the registration provisions of the NFA prior to May 19, 1986, or that the weapon was converted into a machinegun after that date, but failed to do so.[3]

## II. SCIENTER UNDER 26 U.S.C. § 5861

■ Staples asserts that the district court failed to instruct the jury properly on the elements necessary to secure a conviction under § 5861 of the National Firearms Act.[4] The court instructed the jury as follows:

> Essential Elements of the Crime (26 U.S.C. § 5861(d))
>
> In order to establish the offense charged in the indictment, each of the following essential elements must be proved beyond a reasonable doubt:

> MR. KIRKPATRICK: Judge, that does not relieve us of the question, *whether or not in fact when the nipple was filed off the side of the receiver. And there is still a question of fact the jury can decide.* The case should not be continued. It has been continued.
> THE COURT: *I think what you're telling me is, then, the sole issue is when was the nipple filed off.*
> MR. KIRKPATRICK: *Yeah,* the defendants—
> THE COURT: *Because if it was filled* [sic] *off and in the possession of the defendant it makes no difference whether he can register it, because it obviously becomes registerable; is that right?*
> MR. KIRKPATRICK: *Yes, sir.*
> THE COURT: *So, one of the issues the Court should probably submit to the jury is a finding as to whether the nipple was there such that it could not be placed in automatic while it was in the possession of the defendant.*
> Appellant's App. Vol. I at 160, 163–64, Tab J (emphasis added).

Staples, however, failed to pursue this argument at any point during the trial. Instead, he waited until the filing of his reply brief to attempt to argue that the government "did not establish when the stop was filed off." Reply Br. at 3. As the court correctly observed in the above-quoted colloquy, that was a question of fact that Staples properly should have presented to the jury.

**4.** This section makes it unlawful for any person "to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record." 28 U.S.C. § 5861.

First: that the defendant knowingly possessed the firearm described in the Indictment; and

Second: that such firearm was not registered to the defendant in the National Firearms Registration and Transfer Record.

The unlawful offense is complete when the two separate elements just stated are proved.

Appellant's App. Vol. I at 21, Tab D.

Knowingly to Possess

A person is knowingly in possession if his possession occurs voluntarily and intentionally and not because of mistake or accident or other innocent reason. The purpose of adding the word knowingly was to insure that no one would be convicted of possession of a firearm if he did not intend to possess it.

The Government *need not prove that a defendant knows he is dealing with a weapon possessing every last characteristic which subjects it to regulation. It is enough to prove he knows that he is dealing with a dangerous device of such type as would alert one to the likelihood of regulation. If he has such knowledge, and if the particular item is in fact regulated, he acts at his peril.*

Appellant's App. Vol. I at 25, Tab D (emphasis added).

Mere Possession of Unregistered Firearm

Mere possession of an unregistered firearm is a violation of the law of the United States. *It is not necessary for the Government to prove that the defendant knew that the weapon in his possession was a firearm within the*

*meaning of the statute, only that he knowingly possessed it.*

Appellant's App. Vol. I at 26, Tab D (emphasis added). Staples contends that these instructions violate due process in that a jury could find him guilty of the offense charged without his having had any knowledge that he possessed a weapon subject to registration. Specifically, Staples argues that "scienter," "actual knowledge," or "specific intent" [5] is a requisite element of the offense of § 5861.[6]

The threshold question is whether, as the district court concluded, our decision in *United States v. Mittleider*, 835 F.2d 769 (10th Cir.1987), *cert. denied*, 485 U.S. 980, 108 S.Ct. 1279, 99 L.Ed.2d 490 (1988), controls the disposition of this issue. In *Mittleider*, we upheld a jury instruction substantively identical to the instructions challenged here,[7] stating that "[w]e are in accord with the rule adopted by the Fourth Circuit in [*United States v.*] *Shilling*, 826 F.2d 1365, 1368 (4th Cir.1987),] that the government is not required to prove actual knowledge of a weapon's physical properties." 835 F.2d at 774.

Staples attempts to avoid *Mittleider* by labeling this and other critical language as "dicta" since the court concluded from its review of the record that the defendant also had actual knowledge that the firearm had been converted into an automatic weapon. We are not persuaded. The court's reference to the defendant's knowledge was simply an additional reason supporting the conviction. It did not diminish the force of the independent conclusion that actual knowledge is not an element of

---

5. Staples uses these terms interchangeably in discussing what he perceives the mens rea requirement should be under the statute. Each envisions a specific intent type of standard to which a mistake of fact defense could be raised.

6. Staples preserved this issue by timely objection and proffering the following instruction: "[a]n essential element of the offense of possessing a machine gun, is that the possessor knew that the gun would fire fully automatically and the burden is upon the Plaintiff to prove that specific knowledge." Appellant's App. Vol. I at 42, Tab E.

7. The jury instruction in *Mittleider* read: "The mere possession of a firearm which is required to be registered and has not been registered is a violation of the laws of the United States. It is not necessary for the government to prove that the defendant knew that the weapon in his possession was a machine gun within the meaning of the statute or that he knew that registration was required. It is sufficient if you find beyond a reasonable doubt that he knowingly possessed it." 835 F.2d at 774. That instruction was based upon 2 E. Devitt and C. Blackmar, *Federal Jury Practice and Instructions*, § 59.04 (3d Ed. 1977).

the offense. This is apparent in the next section of the opinion in which the court states:

> In a related argument, defendant next claims there was insufficient evidence to show that he had actual knowledge that the J–15 firearm was an automatic weapon. His claim is premised on the *implicit, and unsupported, assumption* that the government was *required to prove that he knew* that the weapon was automatic. *As discussed above, that assumption is unfounded. See United States v. Shilling*, 826 F.2d at 1367–68; *Morgan v. United States*, 564 F.2d [803] at 805–06 [ (8th Cir.1977) ].

*Mittleider*, 835 F.2d at 774–75 (emphasis added).

Staples also seeks to escape the clear command of *Mittleider* by claiming that his case is distinguishable on the facts. Staples asserts that *Mittleider* addressed a situation where a firearm contained external modifications while, in his own case, the weapon had only internal modifications. We do not read the record similarly. The uncontested testimony at trial by BATF Agents Ward and McLaughlin was that the weapon's selector switch, located on the exterior of the receiver, could be turned to the automatic fire position and that there was a shiny spot on the receiver indicative of tampering. *See* Appellant's App. Vol. II at 286, 291, Tab Q; Appellee's Suppl. App. at 16–17. Since the weapon contained external modifications, there is no basis to distinguish this case from *Mittleider*.[8]

We conclude that *Mittleider* controls this case and that the trial court properly instructed the jury on the substantive elements necessary for conviction under § 5861(d). Staples essentially concedes the inescapability of this conclusion by asking us to "reverse" *Mittleider*, Appellants Reply Br. at 15, which, of course, we are powerless to do even if so inclined. *United States v. Spedalieri*, 910 F.2d 707, 710 n. 3 (10th Cir.1990) (a three-judge panel may not overrule a previous opinion of this court).

## III. ADMISSIBILITY OF CERTAIN EXHIBITS

Staples next argues that the district court erred by excluding certain documents that he obtained through discovery from BATF and sought to introduce as evidence at trial. These documents were: Defendant's Exhibit 4, an unpublished internal BATF memorandum concerning AR–15's manufactured with M–16 parts; Defendant's Exhibit 8, a letter discussing AR–15's with installed M–16 parts, sent by BATF in response to a constituent inquiry to Senator Mark Hatfield's office; Defendant's Exhibits 9, 10, 13, and 14 discussing the registrability of an auto sear; Defendant's Exhibit 15, a BATF letter to a gun manufacturer discussing AR–15's and auto sears; and Defendant's Exhibit 5, an internal BATF report from 1967 concerning the test-fire of a particular AR–15 Sporter gun.

Staples argues variously that these exhibits either establish or tend to show that: (1) absent an auto sear, an AR–15 does not need to be registered under the NFA, Appellant's Principal Br. at 23; (2) an AR–15 without an auto sear could not be registered pursuant to 18 U.S.C. § 922(*o*); (3) his weapon was not registerable, *id.;* (4) BATF knew that an AR–15 with M–16 parts could malfunction to fire more than one shot with a single pull of the trigger, *id.* at 27; (5) although BATF knew about the possibility of malfunction, it did not notify gun owners of this situation, *id.* at 26–29; (6) Staples had no personal notice of this "malfunction" condition known as "hammer-follow-down"; (7) his weapon is not a machine gun except by malfunction;

---

8. We note that the circuits have diverged on the issue of whether actual knowledge is an element under § 5861(d). *Compare United States v. Ross*, 917 F.2d 997 (7th Cir.1990); *United States v. Shilling*, 826 F.2d 1365 (4th Cir.1987) (knowledge not required that weapon is subject to NFA) *with United States v. Anderson*, 885 F.2d 1248 (5th Cir.1989) (en banc); *United States v. Williams*, 872 F.2d 773 (6th Cir.1989) (need "mens rea" or knowledge that weapon is covered by the NFA for § 5861 conviction). Even those circuits that diverge from *Mittleider* do so in light of different factual situations. In both *Williams* and *Anderson*, the weapons at issue had no external modifications.

(8) notice of registrability is an element of the crime of possession; and (9) that it was fundamentally unfair, amounting to a deprivation of due process, for the government to have prosecuted him when the government knew that this type of weapon could malfunction to fire automatically but did not publish a warning to gun owners alerting them of this problem.

The district court sustained objections to the admissibility of the documents, primarily on the grounds of relevance. The court did allow Staples to use the documents during cross-examination, and to place his position before the jury.

■■■■ A district court is granted broad discretion in determining the relevancy of evidence. *United States v. Alexander,* 849 F.2d 1293, 1301 (10th Cir.1988). We review a trial court's decision to admit or exclude a given piece of evidence under an abuse of discretion standard. *Id.* (citations omitted).

Fed.R.Evid. 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

As explained below, the proffered documents had no tendency to establish any fact of consequence to the determination of this action. The offense charged is possession of a machine gun, defined in § 5845(b) as *"any* weapon which shoots ... automatically more than one shot ... by a single function of the trigger." 26 U.S.C. § 5845(b) (emphasis added). The exhibits bore no direct relationship to any of the elements of the offense charged, making it more probable or less probable that *this* AR–15 with M–16 parts, having had its selector switch filed off, constituted a firearm subject to registration under the NFA.

Staples argues that an AR–15 without an auto sear is not a machine gun as defined under § 5845(b) and so does not have to be registered under the NFA. It is undisputed that weapons defined as "firearms" under § 5845 must be registered while weap-

ons outside the definition need not be registered. It is also true that auto sears must be registered under the NFA.[9]

Staples attempts to deduce from this that "[t]he implication is, of course, that absent an auto sear, the AR–15 with M–16 internal components is not a National Firearms Act weapon and thus, not registerable." Appellant's Principal Br. at 29. The district court refused to accept the implication that Staples advanced. The court noted variously: "Show me the regulation that says that you [can] not register a fully automatic AR–15 that doesn't have a sear." Appellant's App. Vol. II at 433, Tab S.

> [I]f this man is charged, and I haven't heard it, with failure to register an auto sear, or an auto sear is some way involved in this case involving the registration, then I'll let you use it.... But the mere fact they've said that an auto sear must be registered and is an automatic weapon under the statute doesn't mean that nothing else is.

*Id.* at 467. We agree. The fact that an auto sear requires registration does not mean that all weapons which do not have auto sears are exempt from registration. The question is whether Staples' sear-less AR–15 could fire automatically. Automatic weapons must be registered. Defendant's Exhibits 9, 10, 13, 14, and 15 were not germane to any issue in the case, and it was not an abuse of discretion to exclude their admission.

In a related argument, Staples contends that his weapon was malfunctioning causing it to fire automatically more than one shot with a single pull of the trigger. In other words, if the weapon was a machine gun, it was so wholly by accident. He asserts that a weapon malfunctioning because of hammer-follow-down cannot constitute a firearm under the NFA and so does not have to be registered. We do not need to reach the broader question of whether a weapon that malfunctions can constitute a firearm under the NFA.

---

**9.** *See* Appellant's Reply Br. at 9; BATF Ruling 81–4; 27 C.F.R. § 179.11. *But see United States v. Sullivan,* 919 F.2d 1403, 1412 n. 8 (10th Cir. 1990) (court observed that an AR–15 could be modified to fire fully automatic even without an auto sear).

Staples pursued his malfunction argument vigorously at trial both on direct and cross-examination. He testified himself, and elicited testimony from multiple witnesses, that his AR–15 had never fired more than one round with a single pull of the trigger. The government challenged that theory as part of its proof in support of the charge. The jury examined the weapon and saw videotapes of the weapon being fired. Thus it was able to evaluate Staples' weapon and make an independent judgment as to its capabilities.

■ Staples next asserts that his conviction cannot stand because he had no notice that his weapon needed to be registered. This argument embraces two assertions: (1) that knowledge of registrability is an element of the offense; and (2) that a governmental agency has an affirmative duty to notify the public of what actions constitute a violation in the view of the agency.

*Mittleider* rejects the position that knowledge of registrability constitutes an element of the offense. The government is not required to prove that a defendant knows "that registration of the weapon was required." 835 F.2d at 774; *see also United States v. Freed*, 401 U.S. 601, 607, 91 S.Ct. 1112, 1117, 28 L.Ed.2d 356 (1971). Since neither knowledge nor notice of registrability is an element of the offense, it was not an abuse of discretion for the district court to find that documents discussing this point were irrelevant. Furthermore, the statutes themselves are the source of notice, and they are clear on the subject.

■ For these and other reasons, Staples' other assertion is equally unavailing. BATF's regulatory silence does not necessarily imply that his weapon was not subject to registration. *See* Appellant's Principal Br. at 27.

10. Staples' citation of Defendant's Exhibit 4, a March 11, 1986 BATF memorandum is unhelpful. In the memorandum to the file, the author noted:

> The proposed draft ruling would hold that an AR15 type rifle in combination with an M16 hammer, trigger, disconnector, selector and bolt carrier is a combination of parts

The district court aptly made that point stating:

> Your next question has dealt with the other five M–16 parts, whether they were registerable. Now, as I said at the bench, if this expert [Agent McLaughlin] can testify that the mere possession of the five parts together with an AR–15 gun constitutes a failure to register, then you would be permitted to put in anything where they have ruled that it's a non-registerable item. The facts of this case though are that there is a gun in being, there are installed parts ... that by reason of the manner in which the installation has actually occurred, that it shoots fully automatic and therefore falls within the definition of a machine gun.
>
> *Now, I will tell you once again, if you have got anything that is relative to this case, that where a gun with these installed parts that shoots fully automatic is not registerable, I will let you get into it.*

Appellant's App. Vol. II at 427, Tab S (emphasis added). Staples did not pursue the district court's offer and has cited no case, statute, or BATF regulation to support his contention that the AR–15, as modified, was not subject to registration, or could not be registered under the NFA. Even if BATF ruled that a generic AR–15 with M–16 parts did or did not constitute a firearm requiring registration under the NFA, such a general ruling would not determine the issue of the registrability of Staples' gun as a matter of law. Staples does not discuss, for instance, weapons where the selector switch has been externally modified by filing to allow the weapon to fire automatically instead of just semi-automatically; and he does not discuss the impact of the statute on specific weapons which, however configured generally, operate in fact as a machine gun.[10]

> from which a machine gun can be assembled and is a machine gun if such rifle and parts are in the possession or under control of a person. It would also hold that an AR15 type rifle in combination with any M16 part or parts (whether assembled or unassembled) which, when assembled, shoots automatically

Staples' final contention is that these exhibits prove it was fundamentally unfair for the government to prosecute him. The unfairness of the prosecution is based on two grounds: (1) that the government knew that weapons of this type could malfunction yet concealed that fact from gun owners; and (2) that Staples' gun was unregisterable as a matter of law. Both points are disposed of by our discussion above.[11]

In sum, exclusion of the proffered exhibits did not constitute reversible error.

## IV. "AUTOMATICALLY" UNDER 26 U.S.C. § 5845

■ Staples' final argument is that the district court erred when it refused to give his tendered instruction on the word "automatically" as used in § 5845(b).

Section 5845(b) defines "machine gun" in relevant part as:

*any weapon which shoots,* is designed to shoot, or can be readily restored to shoot, *automatically more than one shot, without manual reloading, by a single function of the trigger.* The term shall also include ... any combination of parts from which a machine gun can be assembled if such parts are in the possession or under the control of a person.

26 U.S.C. § 5845(b) (emphasis added).

The district court instructed the jury in these terms, and refused the following instructions proffered by Staples.

### AUTOMATIC—DEFINED

By automatic is meant self-acting, or the elimination of human agency or volition which results in the saving of labor and increased certainty and uniformity of operation. Citing *Tripp Giant Leveler Co.*

*v. Rogers,* 61 F. 289, 290–91 (D.Mass. 1894).

### AUTOMATICALLY—DEFINED

The word "automatically," as applied to a mechanism, is in common use and is unambiguous. It means "self-acting," and it implies a certain cycle of movements which the machine itself makes without outside control.... In the development of many machines there can be traced a constantly increasing extent of automatism; by which is meant that many steps or processes, which formerly had to be started, stopped, or controlled by the operative, are now started, stopped, or controlled by the machine itself. Citing *American Roll Gold Leaf Co. v. W.H. Coe Mfg. Co.,* 212 F. 720, 724 (1st Cir.1914).

Appellants Principal Br. at 35.

Staples asserts that his instructions properly inject concepts of "reliability" and "lack of human agency" into the definition of "automatically." Appellant's Principal Br. at 36. He also repeats his argument that knowledge is a necessary element to be proved by the government—in this instance, knowledge of possession of a weapon on which reliably fires automatically. *Id.* at 38.

Staples bases his reliability and lack of human agency argument on authority from a 1914 case out of the First circuit and an 1894 district court opinion. He concedes that "[t]hey were patent cases, but they weren't firearm cases." Appellant's App. Vol. II at 488, Tab T. He does not cite and this court can not find any authority for employing the definition of automatically that he commends to us in the context of the National Firearms Act.

■ This Court must determine whether in light of the record as a whole the jury

by manipulation of the selector or removal of the disconnector is also a machine gun.
*The Bureau has determined not to issue the ruling at this time....*
Appellant's App. Vol. I at 45, Tab F.
Staples concludes that the non-issuance of an unpublished, internal BATF ruling implies that his weapon is exempt from the NFA. He cites no authority to support this novel proposition.

11. The testimony by Agent McLaughlin, set out in n. 2, cited by Staples in support of the proposition that *his* weapon was unregisterable, neither stands for that proposition nor, more to the point, compelled the admission of the exhibits in question.

instructions as given correctly stated the applicable law and provided the jury with adequate understanding of the issues involved in the case. *United States v. Agnew*, 931 F.2d 1397, 1410 (10th Cir.1991); *United States v. Willis*, 890 F.2d 1099, 1104 (10th Cir.1989). We are satisfied that this standard was met by the court's instructions.

We have examined all of Staples' arguments, addressing those deemed appropriate, and we find no reversible error in the proceedings below. Accordingly, the judgment of conviction is

AFFIRMED.

EBEL, Circuit Judge, concurring.

I concur in the result of the majority opinion in this case because I agree that this panel is bound by our precedent in *United States v. Mittleider*, 835 F.2d 769 (10th Cir.1987), *cert. denied*, 485 U.S. 980, 108 S.Ct. 1279, 99 L.Ed.2d 490 (1988). I write separately because in my view the growing trend in the law is to require the government to prove knowledge of the characteristics of the weapon that make its possession a crime.

Like the instant case, *Mittleider* dealt with possession of an unregistered automatic weapon. In *Mittleider*, we held that the government need only prove that the defendant knowingly possessed a *gun* and need not "prove actual knowledge of a weapon's physical properties" to convict under the National Firearms Act ("NFA"). *Id.* at 774. In *Mittleider*, however, the defendant "had actual knowledge that [the rifle] had been converted into an automatic weapon," *id.*, and thus the government's lessened burden of proof did not lead to an unjust result in that case.

In cases in which the defendant is truly ignorant of the automatic characteristics of the gun, on the other hand, the law as construed in *Mittleider* may lead to draconian results. Consider, for example, a situation in which a person who knows nothing about guns inherits a rifle from a relative. Unbeknownst to the recipient, the gun is defective and occasionally discharges two rounds of ammunition after a single pull of the trigger, or perhaps it has been converted by a prior owner into an automatic weapon. Because he has no use for the rifle, the recipient stores it with other unnecessary possessions in his basement or attic without having ever used it or indeed even examined it. Under *Mittleider*, that person may be prosecuted and convicted for violation of 26 U.S.C. § 5861 and may receive a sentence of twenty-seven to thirty-three months' imprisonment. *See* U.S.S.G. § 2K2.1(a)(5).

Whether the appellant in the instant case is such an innocent victim is an open question because the jury was precluded from considering his knowledge of the gun's capabilities. Principles of justice and fair play suggest that we ought to overturn *Mittleider* and let the jury decide whether the defendant knowingly possessed an *automatic* weapon.

I start with the basic premise that strict liability is disfavored and generally should be reserved for less serious crimes in which the potential punishment is not severe. Congress' mere failure specifically to include an intent requirement when defining an offense is not adequate by itself to indicate Congress' desire to depart from the normal assumption in criminal law that scienter is a necessary part of the offense. *See Liparota v. United States*, 471 U.S. 419, 426, 105 S.Ct. 2084, 2088, 85 L.Ed.2d 434 (1985) ("criminal offenses requiring no *mens rea* have a 'generally disfavored status'") (citation omitted); *United States v. United States Gypsum Co.*, 438 U.S. 422, 438, 98 S.Ct. 2864, 2874, 57 L.Ed.2d 854 (1978) ("far more than the simple omission of the appropriate phrase from the statutory definition is necessary to justify dispensing with an intent requirement"); *Morissette v. United States*, 342 U.S. 246, 250, 72 S.Ct. 240, 243, 96 L.Ed. 288 (1952) ("The contention that an injury can amount to a crime only when inflicted by intention is no provincial or transient notion. It is as universal and persistent in mature systems of law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil.") (footnote omitted); Wayne R.

LaFave & Austin W. Scott, Jr., *Criminal Law* § 3.8(c), at 248 (2d ed. 1986). Against this backdrop, I look to the law.

As I read the case law, four circuits, including our own, have held that a defendant is strictly liable for possession of an automatic weapon even though the defendant did not know the automatic characteristics of the weapon. In other words, the defendant need not know that the gun can fire more than one round after a single pull of the trigger. *See United States v. Ross,* 917 F.2d 997, 999–1001 (7th Cir.1990) (per curiam), *cert. denied,* — U.S. —, 111 S.Ct. 1078, 112 L.Ed.2d 1183 (1991); *Mittleider,* 835 F.2d at 774; *United States v. Shilling,* 826 F.2d 1365, 1367–68 (4th Cir. 1987) (per curiam), *cert. denied,* 484 U.S. 1043, 108 S.Ct. 777, 98 L.Ed.2d 863 (1988); *Morgan v. United States,* 564 F.2d 803, 805–06 (8th Cir.1977) (per curiam).

On the other hand, six circuits have rejected strict liability to varying degrees, holding that the individual must have actual or constructive knowledge that the weapon was not an ordinary gun. *See United States v. Harris,* 959 F.2d 246, 257–61 (D.C.Cir.1992) ("We believe that if Congress, against the background of widespread lawful gun ownership, wished to criminalize the mere unregistered possession of certain types of firearms—often indistinguishable from other, non-prohibited types—it would have spoken clearly to that effect.... Because the jury was not charged that it had to find that [appellants] knew they were receiving a proscribed firearm (machine gun) ..., appellants' convictions ... must be reversed."), *petition for cert. filed* (May 7, 1992) (No. 91–8167) *and petition for cert. filed* (May 19, 1992) (No.

91–8328); *United States v. Kindred,* 931 F.2d 609, 612 (9th Cir.1991) ("[T]he district court erred by instructing that the government need only prove that the defendant knew that the object was a gun. To secure a conviction under the act, the government must prove that the defendant knew that he possessed a dangerous device of a type that would alert one to the likelihood of regulation."); *United States v. Anderson,* 885 F.2d 1248, 1254–55 (5th Cir.1989) (en banc) ("We think it far too severe for our community to bear—and plainly not intended by Congress—to subject to ten years' imprisonment one who possesses what appears to be, and what he innocently and reasonably believes to be, a wholly ordinary and legal pistol merely because it has been, unknown to him, modified to be fully automatic."); *United States v. Williams,* 872 F.2d 773, 777 (6th Cir.1989) ("the government was required to prove defendants' knowledge of the weapon's automatic quality" because strict liability for a felony may offend due process); *United States v. Gonzalez,* 719 F.2d 1516, 1522 (11th Cir.1983) ("There are two elements the government had to prove ... to sustain a conviction under Section 5861(d): (1) that [the defendant] ... *knowingly possessed an automatic weapon,* and (2) that the automatic weapon was not ... registered....") (emphasis added), *cert. denied,* 465 U.S. 1037, 104 S.Ct. 1312, 79 L.Ed.2d 710 (1984);[1] *United States v. De-Bartolo,* 482 F.2d 312, 316 (1st Cir.1973) ("The Government need not prove that a defendant knows he is dealing with ... a weapon possessing every last characteristic which subjects it to regulation. It is enough to prove he knows that he is deal-

---

1. Several cases cite *Gonzalez* as support for the strict liability view. *See, e.g., Harris,* 959 F.2d at 260; *Williams,* 872 F.2d at 775. In *Gonzalez,* the defendant made no contention that he believed the machinegun to be an ordinary gun. The court held that the government must prove that the defendant "knowingly possessed an automatic weapon," but that the government need not "prove that the defendant knew that the weapon in his possession was a 'firearm' within the meaning of the statute.... There is no scienter required to be proven." *Gonzalez,* 719 F.2d at 1522. The court in *Gonzalez* cited *United States v. Cheramie,* 520 F.2d 325, 329 (5th

Cir.1975), which approved a jury instruction stating that "for purposes of [26 U.S.C. § 5861] the defendant's knowledge that his acts violated the law is not a prerequisite to a guilty verdict." I read *Gonzalez* to mean that the government must prove that the defendant knew the weapon was automatic but need not prove that the defendant knew that such a weapon was illegal under the statute. This states no more than that ignorance of the law is no excuse, but ignorance of fact is an excuse if it deprives the actor of the requisite intent. *See* discussion of this distinction *infra.*

ing with *a dangerous device of such type as would alert one to the likelihood of regulation.*") (emphasis added).[2] Moreover, of the last five circuits that have considered this issue, four have rejected strict liability for possession of an automatic weapon, which supports my view that the trend is to reject the *Mittleider* view of strict liability under this statute.

There is some confusion in the above cases regarding the word *scienter*. Scienter under section 5861 requires that the defendant know of the *physical characteristics* of the gun that make it registerable. Scienter does not require that the defendant know that the *law* requires a gun with such characteristics to be registered, nor does it require that the defendant know that the gun is a "firearm" within the definition of the statute. In other words, ignorance of the law is no defense, but a mistake of fact is. By analogy, to be guilty of larceny, an individual need not know that the taking of the property of another is illegal, but he must know that the property he is taking belongs to another.

Similar reasoning applies in *United States v. Freed*, 401 U.S. 601, 91 S.Ct. 1112, 28 L.Ed.2d 356 (1971), a case that every circuit, regardless of whether or not it favors strict liability, has cited in support of its resolution of the issue. In *Freed*, the Supreme Court held that the government need not prove that the defendant knew that hand grenades had to be registered or that his hand grenades were not registered. However, the Court did require the government to prove that the defendant had "knowledge that the instrument possessed was a firearm." *Id.* at 607, 91 S.Ct. at 1117. The statute defined "firearms" to include hand grenades, so presumably the government had to prove that the defen-

---

**2.** Several courts have also cited *DeBartolo* as a case supporting strict liability for possession of an automatic weapon. *See, e.g., Harris,* 959 F.2d at 260; *Williams,* 872 F.2d at 775. However, while this case does not go as far as the D.C. Circuit, Sixth Circuit, and Fifth Circuit in holding that the government must prove actual knowledge of the characteristics that render the weapon a "firearm" within the meaning of the statute, it does require, like the Ninth Circuit, that the government prove knowledge that the weapon is "a dangerous device of such type as would alert one to the likelihood of regulation." *DeBartolo,* 482 F.2d at 316; *see Kindred,* 931 F.2d at 612; *United States v. Herbert,* 698 F.2d 981, 986 (9th Cir.), *cert. denied,* 464 U.S. 821, 104 S.Ct. 87, 78 L.Ed.2d 95 (1983). In contrast, the strict liability circuits have held that the government need only prove that the defendant knew the item in question was a firearm in the ordinary sense, i.e., a gun. *See Ross,* 917 F.2d at 999; *Mittleider,* 835 F.2d at 774; *Shilling,* 826 F.2d at 1368; *Morgan,* 564 F.2d at 805. The First Circuit in *DeBartolo* held that a *shotgun* was a sufficiently dangerous device that it would put the owner on notice of the possible need for registration. Although I would not necessarily agree with that conclusion, here we are dealing with a rifle. As the Ninth Circuit has recognized explicitly, an ordinary firearm (such as a rifle) may not necessarily be a "dangerous device of such type as would alert one to the likelihood of regulation." *Kindred,* 931 F.2d at 612; *Herbert,* 698 F.2d at 986.

I note that the jury instruction in the instant case might arguably pass muster under the First and Ninth Circuits' approach, because it stated in part that "[t]he Government need not prove that a defendant knows he is dealing with a weapon possessing every last characteristic which subjects it to regulation. It is enough to prove he knows that he is dealing with a dangerous device of such type as would alert one to the likelihood of regulation." 1 Appellant's App., Tab D at 25. However, the court later instructed the jury that "[m]ere possession of an unregistered firearm is a violation of the law of the United States." *Id.,* Tab D at 26. This instruction seemingly contradicts the previous instruction and would appear to impose strict liability for possession of an unregistered firearm, even if it was not a "dangerous device of such type as would alert one to the likelihood of regulation." Because we cannot tell which instruction the jury followed, we must assume that it based its decision on the strict liability instruction. *Cf. Griffin v. United States,* —— U.S. ——, 112 S.Ct. 466, 471, 116 L.Ed.2d 371 (1991) ("where a provision of the Constitution forbids conviction on a particular ground, the constitutional guarantee is violated by a general verdict that may have rested on that ground"). Moreover, *Mittleider* does not require even the above instruction. It *Mittleider,* we approved the following instruction:

> The mere possession of a firearm which is required to be registered and has not been registered is a violation of the laws of the United States. It is not necessary for the government to prove that the defendant knew that the weapon in his possession was a machine gun within the meaning of the statute.... It is sufficient if you find beyond a reasonable doubt that he knowingly possessed it.

*Mittleider,* 835 F.2d at 774.

dant knew the items in his possession were, in fact, hand grenades. *Id.* One must assume that if the defendant had believed the items were merely movie props simulating hand grenades, he would have lacked the requisite intent necessary for conviction. Similarly, automatic weapons (but not unmodified rifles) are defined as "firearms" under the NFA. As I read *Freed,* the government must prove that the defendant "had knowledge that the instrument possessed was a firearm"—that is, that it was an automatic weapon. *Id.* If the defendant did not know he possessed a weapon that was capable of firing multiple times after a single pull of the trigger, then he did not know he possessed a "firearm." *Freed* requires at least that much knowledge or scienter before a defendant can be convicted under section 5861. The scienter rejected in *Freed* related to knowledge of regulation, not knowledge of the reality of what one possessed.

Although the defendant does not need to know the statutory definition of "firearm," the court must look to the statutory definition to see what physical items are described therein as requiring registration. The defendant must know that he possesses such a physical item. Here, although the statute uses the generic term "firearm," it defines that term as a term of art to exclude unmodified rifles, but to include automatic weapons. Thus, it is necessary to show that the defendant knew he possessed not simply an ordinary rifle, but one with the capability of firing multiple shots after a single pull of the trigger.

Were we not bound by precedent, I would have voted to reverse the appellant's conviction and to remand for a new trial. While there were some external signs that the gun in question had been modified, there was also some evidence that the appellant did not know of the gun's apparent automatic capabilities. Thus, whether the appellant did have such knowledge was a question for the jury, but the jury instructions in this case prevented the jury from considering this question. It is not within our province to substitute our factfinding for that of the jury on this critical issue.

Thus, I concur in the result reached in the opinion. However, I would welcome the opportunity for our circuit to reexamine this issue if the appellant files a timely suggestion for rehearing en banc. *See* Fed.R.App.P. 35; 10th Cir.R. 35.